**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

---

No. 97-3288

---

Leroy Thompson, a minor, by and &ast;
through his parent and legal guardian, &ast;
Synarvia Jene Buckhanon, &ast;
&ast;
    Appellant, &ast;
&ast;
    v. &ast;
&ast;
Board of the Special School District &ast; Appeal from the United States
No. 1, (Minneapolis); Peter Hutchinson, &ast; District Court for the
in his official capacity as Superintendent; &ast; District of Minnesota.
Bruce Johnson, in his official capacity &ast;
only as Commissioner of the Minnesota &ast;
Department of Children, Families and &ast;
Learning, (MDCFL); MDCFL; Board &ast;
of Education, sed as Minnesota State &ast;
Board of Education; &ast;
&ast;
    Appellees. &ast;

---

Submitted: March 11, 1998

Filed: May 19, 1998

---

Before BEAM and HEANEY, Circuit Judges, and WATERS,[1] District Judge.

_____

HEANEY, Circuit Judge.

Leroy Thompson (Thompson), by and through his mother, Synarvia Jene Buckhanon (Buckhanon), appeals the district court's grant of summary judgment and motion to dismiss in favor of Minneapolis Special School District No. 1 (District). Thompson sued the District, claiming that it violated various civil rights statutes by denying him a free, appropriate, public education; failing to accommodate his disability properly; and discriminating against him because of his race. We affirm.

I.

Thompson is currently an eighth-grade student at New Visions, a charter school in Minneapolis. Prior to enrolling at New Visions, Thompson attended another charter school, the Minneapolis Community Learning Center (MCLC). Before that, Thompson was a student in several District schools. Thompson has various learning disabilities and is diagnosed as having emotional behavioral disturbance (EBD).

Thompson first enrolled in the District for the 1989-90 school year as a kindergartner at Tuttle Marcy Elementary School (Tuttle). Thompson remained at Tuttle through part of second grade. He had behavioral problems

_____

[1]The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas, sitting by designation.

while a first grader and, as a second grader, he was suspended six times for such things as hitting, kicking, biting, and threatening teachers. Because of Thompson's behavior problems, the District informed Buckhanon that it wanted to assess her son to see if he needed special education services. Buckhanon consented.

After conducting the assessment, the District proposed that Thompson work one on one with an assistant and that Thompson be rewarded for exhibiting good behavior. Additionally, Thompson would be removed from the classroom and school when his behavior became physically dangerous to himself or others around him. Because his behavior did not improve, Buckhanon consented to Thompson's placement at Andersen D, another District elementary school, in a program tailored for children with EBD. An individualized education plan (IEP) was developed for Thompson. Although Buckhanon agreed to the placement, a district social worker questioned whether Andersen D was the proper placement for Thompson. Buckhanon worked at the school and helped assist her son. Following his enrollment at Andersen D, Buckhanon claimed that her son was improperly placed in "time-out" rooms and isolated when he misbehaved.

Nevertheless, Thompson made significant progress while attending Andersen D. By third grade, he had a new IEP and began attending mainstream classes in the morning at another public elementary school, Wilder Math and Science Tech (Wilder). By April 1993, Thompson began attending Wilder on a full-time basis. Because of continuing behavioral problems, Thompson was suspended twice in third grade. Despite these problems, Thompson remained at Wilder in fourth grade. He was reassessed and again diagnosed with EBD and a specific learning disability. A new IEP was developed to help Thompson with reading and behavioral problems. Thompson's behavioral problems got worse, and in January 1994, Thompson was suspended for two days because of fighting. On February 3, 1994, Thompson started grabbing, pushing,

and kicking other students.  School officials called the police, who took Thompson home.  Upset that the police intervened, Buckhanon decided not to send her son back to school.

In mid-February 1994, Buckhanon met with Wilder personnel to discuss placement options for her son. Everyone at the meeting agreed that Thompson should attend the SIMS program at Lyndale Elementary School, another District school,

because it was supposed to have a strong program for students with learning disabilities. For the remainder of fourth grade and part of fifth grade Thompson attended SIMS. In October 1994, Thompson underwent a reassessment. Both Buckhanon and Thompson's teachers received forms to assess his behavior. The teachers found that Thompson was borderline delinquent. Buckhanon, on the other hand, rated her son as showing some aggressive behavior, but to a lesser extent than the teachers. The reassessment indicated that Thompson's primary disability was EBD. Before a new meeting was convened to reconsider Thompson's placement, Buckhanon removed her son from the SIMS program and put him in the MCLC charter school, where he completed the fifth grade.

In June 1995, Buckhanon requested a due process hearing to challenge the District's assessment of her son and the education he was provided before leaving the District and attending MCLC. Thompson was not a student in the District when Buckhanon requested a due process hearing. The District referred the matter to an independent hearing officer (HO). The HO agreed that the District lacked jurisdiction to hear the matter because Thompson no longer attended a school within the District. Buckhanon appealed to a hearing review officer (HRO). While waiting for the HRO's decision, Buckhanon placed her son in the New Visions charter school. The HRO affirmed the HO's decision, and shortly thereafter, Buckhanon commenced this suit on her son's behalf. Buckhanon is satisfied with her son's current education and does not request a new assessment or a due process hearing related to his education at New Visions, but challenges many

aspects of the education he received while attending school in the District.

Thompson's suit alleges that: (1) the District violated his due process rights under the Fourteenth Amendment, the Individuals with Disabilities Education Act (IDEA), 42 U.S.C. § 1983, the Minnesota Constitution, and Minnesota statutory law by denying him a hearing to challenge his IEP and overall education while a student in the District; (2) the District discriminated against him because of his race in violation

7

of Title VI of the 1964 Civil Rights Act and state law by denying him certain educational services and by improperly disciplining him; (3) the District discriminated against him because of his disability under the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act (Section 504), and state law by failing to modify discipline policies to accommodate his disability properly; (4) Peter Johnson, the head of the Minnesota Department of Children, Families, and Learning (MDCFL), the MDCFL, and State Board of Education (SBE) failed to provide a proper due process hearing; and (5) the MDCFL and SBE have wrongfully created or interpreted state laws by establishing a charter school system that deprived Thompson of a hearing under the United States Constitution, IDEA, § 1983, and Minnesota law.

The district court granted the District's motion to dismiss on claims 1, 4, and 5 listed above and granted summary judgment for the District on claims 2 and 3 listed above. Thompson appeals.

## II.

In analyzing Thompson's numerous claims, we address three distinct issues: (1) whether Thompson has stated a claim under IDEA and Minnesota state law; (2) whether there are genuine issues of material fact as to whether the District discriminated against Thompson under the ADA, Section 504, and Minnesota law; and (3) whether there are genuine issues of material fact as to whether Thompson was discriminated against because of his race under Title VI of the 1964 Civil Rights Act and under state law.

8

Whether a complaint sufficiently states a cause of action is a legal question subject to de novo review. <u>Westcott v. City of Omaha</u>, 901 F.2d 1486, 1488 (8th Cir. 1990) (citations omitted). In reviewing a motion to dismiss, we assume all facts alleged by the plaintiff are true. <u>Id.</u> Dismissal is only proper if it appears that a plaintiff is unable to prove any set of facts entitling the plaintiff to relief. <u>Id.</u>

We review a district court's grant of summary judgment de novo. United States ex. rel. Glass v. Medtronic, Inc., 957 F.2d 605, 607 (8th Cir. 1992). In considering whether to grant summary judgment, a court examines all the "pleadings, depositions, answers to interrogatories . . . admissions on file . . . [and] affidavits." Fed. R. Civ. P. 56(c). After viewing the record in a light most favorable to the nonmoving party, summary judgment is appropriate only where there is "no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law." Langley v. Allstate Ins. Co., 995 F.2d 841, 844 (8th Cir. 1993) (citations omitted).

## A.   IDEA CLAIMS

IDEA was enacted to ensure that children with disabilities receive a free, appropriate, public education. 20 U.S.C. § 1400(c). Under IDEA, a parent or guardian is entitled to procedural safeguards to ensure that his or her disabled child's educational needs are being met by the student's school district. For example, 20 U.S.C. § 1415(b)(1)(E) allows a parent or guardian "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." Id. After making a complaint, the child is entitled to an impartial due process hearing. Id. § 1415(b)(2). Under the Minnesota implementing statute for IDEA, a parent may obtain an impartial due process hearing when he or she objects to a proposed assessment; transfer or placement of a child; and to the addition, provision, denial, or

removal of educational services.  Minn. Stat. § 120.17, subd. 3b(e)(1)-(5).  Under Minnesota law, a due process hearing shall be "initiated and conducted by and in the school district responsible for assuring that an appropriate program is provided."  Id. subd. 3b(e).

Thompson has not stated a cause of action under IDEA because his request for a review comes after he left the District previously responsible for his education.  At the time Thompson brought suit, Minnesota law considered a charter school a separate

school district.  Minn. Stat. § 120.064, subd. 12.  IDEA provides a mechanism for challenging the education a student has been provided within a school district.  If a student changes school districts and does not request a due process hearing, his or her right to challenge prior educational services is not preserved.  Subsequent challenges to the student's previous education become moot because the new school district is responsible for providing a due process hearing.  Buckhanon correctly argues that the United States Supreme Court has allowed for reimbursement of private school tuition where a parent unilaterally removes a child from a public school during the pendency of formal proceedings and the public school has not provided a free, appropriate, public education. See <u>Florence County Sch. Dist. Four v. Carter</u>, 510 U.S. 7, 15 (1993).  The Court has also allowed reimbursement for out-of-pocket expenditures where a child left the school district during the pendency of formal proceedings, and it was ultimately determined that the child did not receive a free, appropriate, public education.  <u>School Comm. of Burlington v. Department of Educ. of Mass.</u>, 471 U.S. 359, 369 (1985).

This case is distinguishable from those cited above. In this case, Thompson transferred to a Minneapolis charter school, a different school district under Minnesota law, and Buckhanon did not incur any tuition charges.  Additionally, Buckhanon did not preserve her rights by instituting a due process hearing prior to Thompson's transfer.  A parent or guardian has the right to request a due process hearing whenever he or she is dissatisfied with an aspect of a child's education.  34 C.F.R. § 300.506(a).  Under Minnesota regulations, the

District was responsible for informing Buckhanon that she had the right to request a due process hearing if she disagreed with the District's efforts to provide her son with a free, appropriate, public education. Minn. R. 3535.3300(A)-(G). From a careful review of the record, it appears that the District provided Buckhanon with sufficient notice and the opportunity to request a due process hearing.[2]

---

[2]At oral argument, Buckhanon complained that she did not know she could request a hearing until after her son had left the District. In particular, in 1994 she claimed to have protested the District's reassessment of her son. The record, however, shows that she consented to the reassessment. The record also shows that she was informed of her right to request a due process hearing. (J.A. App. at 61.)

Contrary to Buckhanon's assertions, her need to preserve the right to challenge Thompson's prior educational services is not simply a procedural barrier. The purpose of requesting a due process hearing is to challenge an aspect of a child's education and to put the school district on notice of a perceived problem. Once the school district receives notice, it has the opportunity to address the alleged problem. Under Buckhanon's theory, a school would be potentially liable for unanticipated costs for alleged problems of which it is totally unaware.[3] "Recovering tuition [or costs] is a remedy only if the free and appropriate public education (FAPE) guarantee has been violated, exhaustive administrative remedies have been tried before placement, and the school has been notified." Cindy L. Skaruppa, Ann Boyer & Oliver Edwards, <u>Tuition Reimbursement for Parent's Unilateral Placement of Students in Private Institutions: Justified or Not?</u>, 114 Educ. Law Rep. 353, 354 (West 1997).

Buckhanon argues that the 1997 IDEA amendments impose an obligation on local school districts to provide the same services for charter school students as it does its own. While we do not decide the issue, Buckhanon's argument fails for two reasons. First, this case was brought well before the IDEA amendments went into effect. Second, if Buckhanon believes that Thompson is not

---

[3]Here, for example, Buckhanon claims that she spent roughly $2,000 on tutoring fees for her son so that he could keep up in school. While this may have been of great benefit to Thompson, we cannot agree that a school district must reimburse a parent for unchecked educational expenses.

receiving a free, appropriate, public education, she is currently entitled to request a due process hearing.

As part of her IDEA claim, Buckhanon requests monetary damages as well as one-on-one tutoring services for Thompson. If Buckhanon believes that her son's

current education is insufficient, she may request tutoring services from his current school or seek a due process hearing and request such services. We note, however, that Buckhanon has said that she is presently satisfied with her son's education. As to compensatory damages, a claim "based upon defendants' alleged violations of the IDEA may not be pursued in this . . . action because general and punitive damages . . . are not available under IDEA." Heidemann v. Rother, 84 F.3d 1021, 1033 (8th Cir. 1996).

Finally, Thompson's § 1983 claims must also fail. There is no evidence of a violation of Thompson's rights under IDEA or the Fourteenth Amendment. We note that the district court held that the MDCFL, SBE, and individuals sued in their official capacity are immune from suit in federal court. Because there is no evidence that Thompson's rights were violated, we decline to reach the issue of immunity.

## B. DISABILITY CLAIMS

Thompson also asserts causes of action against the District under the ADA, Section 504, and the Minnesota Human Rights Act (MHRA).[4] Buckhanon claims that her son was improperly diagnosed as EBD and mistreated because the school failed to alter its discipline policies to accommodate her son. As to the improper diagnosis, Buckhanon points to the testimony of a district social

---

[4]Because the state law claims are analyzed in the same manner as the federal civil rights claims, we treat them together. Brantley v. Independent Sch. Dist. 625, 936 F. Supp. 649, 657 n.16 (D. Minn. 1996).

worker who believed that Thompson was not EBD and that Thompson's placement at Andersen D was improper. In support of her failure to accommodate claim, Buckhanon asserts that her son was put in "time-out" rooms and isolated when he misbehaved and was suspended on several occasions.

In the context of a school case, in order to make out a prima facie case under the ADA and Section 504, Buckhanon must show bad faith or an exercise of gross misjudgment by the District. Hoekstra,103 F.3d at 626-27. Although Thompson's presentation of the district social worker's testimony might have created fact issues showing bad faith by the District, the district court properly excluded this evidence because Thompson's attorney presented it to the court two months past the court's deadline. While the district court properly excluded the evidence, had the testimony been considered, it is unlikely that it would have supported a finding of bad faith or gross misjudgment. The District evaluated Thompson on several occasions with Buckhanon's consent. Although the social worker might be correct that Thompson's disruptive behavior resulted from frustration as a result of his learning problems, at most, this testimony shows a professional disagreement over diagnosis. We are not persuaded that such disagreement rose to the level of bad faith or gross misjudgment. Consequently, we reject Buckhanon's ADA, Section 504, and MHRA claims challenging Thompson's EBD diagnosis.

Buckhanon's claim that the District mistreated Thompson arises from allegations that Thompson did not receive an education for part of the 1994 school year and was frequently suspended. Buckhanon's argument fails because she chose to take her son out of school after the 1994 police intervention. Even if Buckhanon was frustrated by the police involvement, she failed to challenge the District's actions. Instead, after the incident, she collaborated with the District in choosing a different placement for her son. As to the frequent

suspensions, the record is clear that Thompson's suspensions were for exhibiting dangerous behavior to himself and to others. Consequently, we reject Buckhanon's claims.

## C.  TITLE VI CLAIMS

Finally, Thompson argues that the District identified him as EBD, provided him with an inferior education, and disciplined him because of his race and that these

actions prevented him from receiving an appropriate education. To establish the elements of a prima facie case under Title VI, a complaining party must demonstrate that his/her race, color, or national origin was the motive for the discriminatory conduct. See Brantley v. Independent Sch. Dist. 625, 936 F. Supp. 649, 657 n.16 (D. Minn. 1996) (citing 42 U.S.C. § 2000d).

As to identifying Thompson as EBD because of his race, Buckhanon participated in all of Thompson's placement decisions and agreed that her son should attend Andersen D because of his EBD. The record clearly shows that Thompson exhibited disruptive behavior. The record also shows that nonminority children with EBD were treated similarly when they exhibited disruptive behavior. For example, they were put in time-out rooms and similarly disciplined. In short, there is no evidence showing that the District acted in a discriminatory manner in identifying Thompson as EBD or in the way he was treated.

Regarding Thompson's claim that he did not receive an appropriate education because of his race, Thompson's suspensions were motivated by such acts as physically assaulting other children and for threatening his teachers. Thompson presents no evidence that race was the motivating factor in his suspensions. We note that his longest absence was due to his mother's decision to pull him out of school after the 1994 police incident. We will not impute that absence to the school system.

Buckhanon claims that her son, like many other children at Andersen D, was placed in the school because

of his race.  Buckhanon, who worked at Andersen D, claims that the racial composition of  the school was almost entirely African American.  The head of the EBD program while Thompson was a student at Andersen D, however, provided uncontroverted evidence of the actual demographic breakdown showing that at the time Thompson was a student "the percentage of African American students enrolled at Andersen D was nearly proportionate to district-wide enrollment."  (J.A.

at 140.)[5]  Assuming _arguendo_ that the African American enrollment at Andersen D was higher than the rest of the District, Thompson failed to provide any evidence of racial discrimination.  Therefore, for the reasons discussed above, his Title VI and other race-based claims fail.

## III.

For the foregoing reasons, we affirm the district court's grant of summary judgment and motion to dismiss in favor of the District.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[5]According to this uncontroverted testimony, the actual demographic breakdown was African Americans = 63%, Native Americans = 12%, Hispanic Americans = 1% and European American students = 24%.  (J.A. at 140.)