# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 06-1672

_____

| | | |
|---|---|---|
| Alfred Flowers, | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| City of Minneapolis, Minnesota, | * | |
| | * | Appeal from the United States |
| Defendant, | * | District Court for the |
| | * | District of Minnesota. |
| Kevin Stoll, in his individual and | * | |
| official capacities, | * | |
| | * | |
| Defendant/Appellant, | * | |
| | * | |
| Sherry Appledorn, in her individual | * | |
| and official capacities, | * | |
| Erika Christensen, in her individual | * | |
| and official capacities, John Does 1-5, | * | |
| | * | |
| Defendants. | * | |

_____

Submitted: October 19, 2006
Filed: March 1, 2007

_____

Before SMITH, BOWMAN, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Minnesota police officer Kevin Stoll appeals the district court's denial of his motion for summary judgment based on qualified immunity. Alfred Flowers sued Stoll under 42 U.S.C. § 1983, alleging violations of several constitutional rights. The district court dismissed a number of claims, but concluded that Stoll was not entitled to qualified immunity with respect to Flowers's allegations that Stoll violated his substantive due process rights under the Fourteenth Amendment. We conclude that the substantive due process claims should have been dismissed, and we therefore reverse.

I.

Flowers is an African-American resident of Minneapolis, and Stoll is a lieutenant in the Minneapolis Police Department. In the summer of 2003, Flowers began renting a home on Knox Avenue South in Minneapolis, on the same block where Stoll lived. Neither knew of the other's identity on the block until the summer of 2004, although Stoll was aware that Flowers had a previous encounter with the police department. In September 2003, Flowers was arrested for disorderly conduct and resisting arrest, and later that year, Stoll accessed a computerized report concerning the Flowers arrest. In September 2004, after the events at issue in this lawsuit, Flowers was acquitted of the charges.

On August 1, 2004, Stoll noticed graffiti on two garages in the neighborhood near the home rented by Flowers. This occurred in an area where graffiti was uncommon. Stoll spoke with the police gang expert about the incident. He explained that the graffiti appeared after the Flowers family moved into the neighborhood, and he raised a concern about whether gang activity might be associated with the Flowers residence. After observing the graffiti, an investigator told Stoll that she thought it was gang-related, and that she believed a woman suspected to be a gang member lived at the Flowers residence. She also sent Stoll a packet of information on Flowers. The police gang unit, however, made no further investigation into the matter.

On his own initiative, Stoll contacted the patrol supervisor for his neighborhood and requested a "directed patrol" of the Flowers residence. In a directed patrol, officers are instructed to patrol the area of the target address as time permits. On the same day, during a period when Stoll was the highest ranking officer on duty, he attended roll call at the precinct with jurisdiction over the Flowers residence. There, he distributed information about Flowers to the patrol officers, informed them about the graffiti near his house, and offered a steak dinner for any officer who made an arrest that led to the conviction or eviction of anyone living at the Flowers residence. There is conflicting evidence in the record as to whether Stoll's actions were contrary to official procedures. (App. at 348, 430, 458).

As a result of Stoll's request, officers began to conduct heavy patrol on Knox Avenue. Department records show that officers checked the Flowers residence six times on directed patrol in August, for a total of sixty-nine minutes. Flowers testified that passing cruisers shined their lights into his home and frightened his family. He stated that a window at his home was broken during this period, shortly after a police squad car was seen driving by the house. Flowers averred that he and his family left the house to stay at another location for a weekend at the end of August. He also presented a letter from a woman whose son was enrolled in Flowers's childcare facility, but withdrew in 2004 "due to allegations regarding the owner," and then re-enrolled in 2005 after the woman "found out that the allegations were not true." (App. at 542). She did not specify whether the "allegations" arose from the criminal charges of which Flowers was acquitted in 2004, or the investigation of possible gang activity initiated by Stoll.[1] The directed patrol ended in late August, around the time Flowers

_____

[1]In an affidavit, Flowers also stated that he "learned from a police officer that police had put out a 'hit' on [him]," (App. at 58), and his sister, a former Minneapolis police officer, averred that she was told by an unnamed police officer that "some Minneapolis Police had put out a 'hit' on [her] brother." (App. at 53). Neither witness attributed this alleged threat to Stoll, and presumably because the statements constituted inadmissible hearsay, the district court did not mention them. *See Sallis*

filed a lawsuit against the Minneapolis Police Department and several officers, including Stoll, based on this series of events.

In his complaint, Flowers alleged federal claims under 42 U.S.C. §§ 1981 and 1983 and state law claims of defamation and negligent infliction of emotional distress. The district court dismissed the claims against all defendants but Stoll, and dismissed all claims against Stoll except for the constitutional claims based on substantive due process.

## II.

To decide whether Stoll is entitled to qualified immunity, we first consider whether the facts alleged, taken in the light most favorable to Flowers, show that Stoll's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If so, then we determine whether the constitutional right was clearly established at the time. *Id.*

The claims at issue on this appeal are based on the substantive component of the Due Process Clause of the Fourteenth Amendment. The Due Process Clause provides the familiar guarantee of fair procedures, prohibiting the deprivation of life, liberty, or property by a State without due process of law. In addition, under the rubric of substantive due process, it "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

---

*v. Univ. of Minnesota*, 408 F.3d 470, 474 (8th Cir. 2005) (explaining that non-movant must come forward with admissible evidence to defeat summary judgment).

To establish a violation of substantive due process rights by an executive official, a plaintiff must show (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the "contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998); *Terrell v. Larson*, 396 F.3d 975, 978 n. 1 (8th Cir. 2005) (en banc). In denying Stoll's motion for summary judgment, the district court reasoned that "Stoll's actions were sufficiently conscience shocking to impose liability," and that qualified immunity was not available, because "a jury could conclude that a reasonable officer in Stoll's position would have deemed his actions to violate Flowers's substantive due process rights." The district court concluded that Flowers had not established an "actual deprivation of a life, liberty, or property right" for purposes of his *procedural* due process claim, but the court did not discuss what alleged fundamental right was at stake in the substantive due process analysis.

We conclude that Stoll is entitled to summary judgment on the substantive due process claim because whatever effect his actions may have on the contemporary conscience, the evidence does not show that Stoll deprived Flowers of a fundamental right protected by the Due Process Clause. For purposes of substantive due process analysis, fundamental rights are those "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Terrell*, 396 F.3d at 978 n.1 (quotation omitted). To discern "guideposts for responsible decisionmaking" in this area, we look to "[o]ur Nation's history, legal traditions, and practices." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (quoting *Collins*, 503 U.S. at 125).

In urging us to affirm the district court's ruling on substantive due process, Flowers suggests that a number of asserted fundamental rights are at issue in this case, and we consider the principal contentions in turn. First, Flowers claims that Stoll's conduct threatened his fundamental right to "personal safety." For an explication of this asserted right, Flowers directs us to *Wood v. Ostrander*, 879 F.2d 583 (9th Cir.

1989), which discussed a liberty interest in "physical security" in a case involving a sexual assault, *id*. at 589, and relied in turn on *Ingraham v. Wright*, 430 U.S. 651, 674-75 (1977), a *procedural* due process case that analyzed a child's liberty interest in avoiding excessive corporal punishment in public school. Assuming for the sake of argument that the liberty interest discussed in *Ingraham* can be transported into substantive due process analysis, the facts alleged by Flowers do not approach the situations in *Wood* or *Ingraham*. There is no allegation of physical injury to Flowers or his family, and he has developed no substantial argument that surveillance of a home or the unwarranted direction of suspicion toward a household deprives the occupants of an unenumerated constitutional right to "personal safety" recognized by our Nation's history and traditions.

Flowers also alleges a violation of his liberty interest to engage in "the common occupations of life." *See Meyer v. Nebraska*, 262 U.S. 390 (1923). This liberty interest was first described in connection with a statute that prohibited the teaching of school in any language other than English. *Id*. at 399-400. The Court since has defined it as applying to the "complete prohibition of the right to engage in a calling," *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999), and it may also extend to a suspension without pay and demotion in public employment, at least where the adverse action is undertaken based on race. *Moran v. Clarke*, 296 F.3d 638, 645 (8th Cir. 2002) (en banc). But whatever its scope, this asserted fundamental right clearly does not encompass a "brief interruption" of work in a desired occupation. *Conn*, 526 U.S. at 292; *see Singleton v. Cecil*, 176 F.3d 419, 426 n.8 (8th Cir. 1999) (en banc). Flowers complains, at most, of a temporary slowdown in his childcare business, evidenced by an inconclusive letter from one customer. The alleged injury, therefore, does not rise to the level of a deprivation of the fundamental right to engage in one's chosen occupation.

Flowers next asserts that Stoll interfered with the fundamental "right of families to live together," citing the plurality opinion in *Moore v. City of East Cleveland,* 431

U.S. 494 (1977). *Moore* held unconstitutional a zoning ordinance that defined "family" in such a way as to prohibit a grandmother and her two grandsons from living together in an area designated for "single family" dwellings. *See Doe v. Miller*, 405 F.3d 700, 710 (8th Cir. 2005). The *Moore* plurality's reasoning is inapposite here. Stoll's actions did not operate directly on the family relationship, and while the patrol activity was disturbing to the Flowers household and frightening to the children, it did not force the family members to live apart or otherwise amount to "intrusive regulation" of "family living arrangements." *Moore*, 431 U.S. at 499 (plurality opinion). Flowers also invokes the individual rights "to direct the upbringing and education of one's children," "to marry and have children," and "to marital privacy." But the Supreme Court's decisions concerning the rearing of children and the use of contraception are far afield from this situation, *e.g.*, *Pierce v. Society of the Sisters*, 268 U.S. 510, 534-35 (1925); *Griswold v. Connecticut*, 381 U.S. 479, 485-86 (1965), and they do not support Flowers's claim.

Flowers contends, finally, that Stoll acted affirmatively to place Flowers in a position of danger that he would not otherwise have faced, and that this action creates a constitutional duty of care on the part of the officer under the Due Process Clause. *See S.S. v. McMullen*, 225 F.3d 960, 962 (8th Cir. 2000) (en banc); *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992). This "state-created danger" doctrine has been applied, for example, where a state trooper knowingly left the female passenger of an arrested driver stranded in a high-crime area, where she was later raped, *Wood*, 879 F.2d at 589-90, and where police officers stranded young children on a Chicago expressway during inclement weather. *White v. Rockford*, 592 F.2d 381, 382-84 (7th Cir. 1979). The evidence in this case, however, is insufficient to show that Stoll placed Flowers in a position of substantial danger from which he was unable to protect himself. Viewed in the light most favorable to Flowers, the directed patrols and requests for investigation may constitute harassment, but they did not put the Flowers family in danger of an armed police raid or other assaultive conduct. Evidence that a window was broken at the Flowers home is too insubstantial to

establish that Stoll created a "danger of significant harm" to the family that did not previously exist. *McMullen*, 225 F.3d at 962. The record is thus insufficient to meet the first element of a substantive due process claim based on the State's affirmative creation of danger to a citizen.

Flowers's asserted injuries were a month of living with police patrols and spotlighting of his house, a broken window that occurred in close proximity to a police patrol, a short-term loss of some business at his childcare facility due to "allegations about the owner," and a temporary stay at another location for a weekend. These harms are not *de minimis*, but even assuming they all could be attributed to Stoll, the scope of substantive due process is carefully circumscribed, and the evidence presented here falls short of establishing the deprivation of a fundamental right or liberty interest as is required to support a constitutional claim under that theory.

\* \* \*

For the foregoing reasons, we reverse the district court's decision denying in part Stoll's motion for summary judgment, and we remand the case for further proceedings consistent with this opinion.

————————————————