# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3019

_____

| | | |
|---|---|---|
| C.N., on her own behalf and by and through her parent and natural guardian, J.N., | * * * * | |
| Appellant, | * * | |
| v. | * * | |
| Willmar Public Schools, Independent School District No. 347; Michael Carlson, Chair, Willmar Board of Education, in his representative capacity; Kathryn Leedom, Superintendent in her personal and representative capacities; Susan Smith, Supervisor of Special Education, in her personal and representative capacities; Rebecca Simenson, Principal, in her personal and representative capacities; Lisa Van Der Heiden, in her personal and representative capacities, | * * * * * * * * * * * * * * * | Appeal from the United States District Court for the District of Minnesota. |
| Appellees. | * | |

_____

Submitted: June 11, 2009
Filed: January 7, 2010 **(Corrected 1/11/10)**

_____

Before MELLOY, BEAM and COLLOTON, Circuit Judges.

_____

BEAM, Circuit Judge.

C.N., by and through her mother, J.N., appeals the dismissal of various federal claims against Willmar Public Schools, Independent School District No. 347 (the District), several officials affiliated with the District and her former special education teacher Lisa Van Der Heiden. We affirm.

## I.    BACKGROUND

When this action commenced, C.N., a special education student, attended fourth grade in the Atwater Public School District in Atwater, Minnesota. This action, however, concerns events that allegedly occurred while C.N. was enrolled at Lincoln Elementary School within the District in Willmar, Minnesota, where C.N. attended school from midway through kindergarten to midway through her third grade year.

C.N. was born in March 1998 and was tested for Autism Spectrum Disorder (ASD) in 2001. Although the testing ruled out ASD, further testing revealed C.N. had a communications disorder and attentional and hyperactivity problems. Ultimately, C.N. was designated as developmentally delayed with speech and language impairment. Thus, during kindergarten at Jefferson Elementary, a school within the District, C.N. had an individualized education program (IEP) geared toward addressing her special needs. The IEP was created through the collaborative efforts of the local education agency, teachers, parents and behavioral service providers (the IEP team). C.N.'s IEP included a behavior intervention plan (BIP), which authorized the use of restraint holds and seclusion when C.N. exhibited various target behaviors. After continued behavioral problems, the District and J.N. agreed C.N. should be assessed by Tim Ardoff, an outside evaluator from Southern Minnesota Community Support Services. After the evaluation, the District transferred C.N. to Lincoln Elementary, another District school, in January 2004. C.N.'s IEP and BIP were also revised to incorporate some of Ardhoff's suggestions. Ardhoff did not specifically

recommend the use of restraint holds or seclusion. Over J.N.'s alleged objections, however, C.N.'s BIP continued to authorize such procedures to address certain target behaviors. During later evaluations, Ardhoff recommended against seclusion, and J.N. allegedly continued to object to the use of restraints and seclusion. Throughout C.N.'s time at Lincoln, however, the IEP team continually adjusted her IEP, and at all relevant times, the IEP authorized controlled procedures.

While attending Lincoln, C.N. worked with Defendant Lisa Van Der Heiden, a special education teacher. Van Der Heiden sometimes used the controlled procedures authorized in C.N.'s BIP, and recorded the incidents in behavioral and communication logs she kept for her students. The complaint alleges that during C.N.'s time under her care, Van Der Heiden used those techniques improperly and excessively and also mistreated C.N. For example, Van Der Heiden allegedly made C.N. sit at a "thinking desk" and hold a physical posture for a specified time, or else face restraint or seclusion. Van Der Heiden also allegedly yelled and shouted at C.N., demeaned and belittled C.N., once pulled C.N.'s hair when she would not hold a posture at the thinking desk and once denied C.N. use of the restroom, causing an accident. C.N. also reported to J.N. that Van Der Heiden "choke[d] her and that the restraints hurt her very much."

During C.N.'s third grade year (the 2006-07 school year), a paraprofessional reported Van Der Heiden to the Minnesota Department of Education's (MDE) Maltreatment of Minors Division for maltreatment of C.N. This was the third such report made against Van Der Heiden. J.N. learned of those allegations in August 2006, and filed a complaint with the MDE's Accountability and Compliance Division in September 2006. Ultimately, according to the complaint, the MDE investigations concluded Van Der Heiden violated a number of C.N.'s rights as a child with a disability and also maltreated C.N. by denying her access to the restroom. During the MDE's investigations, the District placed Van Der Heiden on leave and conducted its own investigation into allegations that she mistreated two students, one of whom was

C.N. On two previous occasions in 2005 and 2006, the District had conducted similar investigations but found no misconduct by Van Der Heiden. This time, the District found evidence that Van Der Heiden denied C.N. access to the restroom but attributed the incident to a lapse in judgment. Thus, Van Der Heiden was never disciplined by the District for any maltreatment allegations.[1] Without notice to J.N., Van Der Heiden returned to Lincoln on October 2, 2006. She remained at Lincoln until October 6, 2006, but was not at school the following week and had no further contact with C.N.

J.N. thereafter repeatedly contacted Defendant Kathryn Leedom, District Superintendent, and asked to be notified if and when Van Der Heiden returned to Lincoln. On November 29, 2006, Leedom wrote J.N. and informed her that Leedom had no obligation to provide that information to J.N. J.N. subsequently withdrew her daughter from Lincoln and enrolled her at St. John's, a private school in Atwater, Minnesota, for the remainder of her third grade year. J.N. enrolled C.N. in the Atwater public school district for the 2007-08 school year.

On October 17, 2007, C.N., by and through J.N., requested an administrative hearing and filed a complaint with the MDE, challenging the adequacy of the educational services provided by the District. Relying on a line of cases beginning with Thompson v. Board of Special School District No. 1, 144 F.3d 574 (8th Cir. 1998), the Administrative Law Judge (ALJ) granted the District's motion to dismiss the hearing request for lack of jurisdiction because C.N. was no longer enrolled in the

---

[1]The district court stated "[u]ltimately, the District dismissed the maltreatment allegations against Van Der Heiden," which C.N. vigorously contests on appeal, noting she alleged the MDE conducted the maltreatment investigation and concluded Van Der Heiden *did* engage in maltreatment. The preceding sentence in the district court's opinion, however, refers to paragraphs in the complaint that discuss the District's investigations and allege that Van Der Heiden was never disciplined by the District for any maltreatment. Thus, we think the court simply meant to indicate the District's internal investigation revealed no wrongdoing by Van Der Heiden.

District and had transferred to Atwater without requesting a hearing against the District.

C.N. appealed that ruling to the district court,[2] and asserted various federal and state claims against the District, District Board Chairman Michael Carlson in his official capacity, and Van Der Heiden, Leedom, Lincoln principal Rebecca Simenson and Supervisor of Special Education Programming Susan Smith, in both their individual and official capacities. As relevant to this appeal, C.N. asserted federal claims under the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act and 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments. The district court concluded C.N.'s IDEA claim failed as a matter of law because she did not request a hearing on her claims against the District until after leaving the District. The court also dismissed C.N.'s remaining federal claims for failure to state a claim and declined to exercise jurisdiction over her state law claims.[3] This appeal follows.[4]

_____

[2]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

[3]C.N. does not challenge the dismissal of her IDEA or Section 504 claims against the individual defendants, in both their official and individual capacities, or her claims under § 1983 for violations of her right to procedural due process and her rights under the IDEA, Section 504 and the Equal Protection Clause.

[4]In her appendix, C.N. has included two administrative decisions which are not a part of the record below. "'An appellate court can properly consider only the record and facts before the district court and thus only those papers and exhibits filed in the district court can constitute the record on appeal.'" Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc., 528 F.3d 556, 559-60 (8th Cir. 2008) (quoting Huelsman v. Civic Ctr. Corp., 873 F.2d 1171, 1175 (8th Cir. 1989)); see also Fed. R. App. P. 10(a). Because these documents were presented for the first time on appeal, "they are not part of the record for our review," and we cannot consider them. Bath Junkie, 528 F.3d at 560. Accordingly, we grant Appellees' motion to strike pages 1-41 of the Appendix and any corresponding facts and arguments in Appellant's briefs.

## II. DISCUSSION

### A. Standard of Review

"This court reviews *de novo* the grant of a motion to dismiss, taking all facts alleged in the complaint as true." Owen v. Gen. Motors Corp., 533 F.3d 913, 918 (8th Cir. 2008) (quotation omitted). We bear in mind, however, that although a complaint need not include detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and alteration omitted). Instead, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

### B. IDEA Claim

We first address C.N.'s challenge to the dismissal of her IDEA claim against the District. As noted above, after transferring to the Atwater public school system, C.N. requested an administrative hearing against the District, challenging the adequacy of the educational services provided by the District. Like the ALJ, the district court concluded C.N.'s IDEA claim failed under Thompson, 144 F.3d 574, because she did not request a hearing to challenge the education provided by the District until after leaving the District. C.N. contends that ruling was in error because recent changes to Minnesota law have rendered Thompson invalid. We disagree.

The IDEA seeks to ensure that all disabled children receive a free appropriate public education (FAPE) designed to meet their needs. 20 U.S.C. § 1400(d)(1)(A). To that end, the IDEA "provides federal money to state and local education agencies in order to assist them in educating handicapped children on the condition that the states and local agencies implement the substantive and procedural requirements of

-6-

the Act." M.P. v. Indep. Sch. Dist. No. 721, 326 F.3d 975, 979 (8th Cir. 2003). Substantively, for example, school districts must develop an IEP for each disabled student. Id. The IDEA also provides certain "procedural safeguards to permit parental involvement in all matters concerning the child's educational program and [to allow] parents to obtain administrative and judicial review of decisions they deem unsatisfactory or inappropriate." Id. Thus, a parent who is dissatisfied with certain aspects of a child's special education may request an administrative due process hearing to resolve the matter, and the party aggrieved by the outcome of the hearing process may file suit in state or federal court. Id. at 979-80. See also 20 U.S.C. § 1415(b)(6), (f) & (i)(2)(A).

When Thompson was decided, the Minnesota statute implementing the IDEA provided that such hearings "shall be '*initiated and conducted by and in* the school district responsible for assuring that an appropriate program is provided.'" 144 F.3d at 578 (emphasis added) (quoting former Minn. Stat. § 120.17, subd. 3b(e)). And in Thompson, we concluded that "[i]f a student changes school districts and does not request a due process hearing, his or her right to challenge prior educational services is not preserved." Id. at 579. Rather, "[s]ubsequent challenges to the student's previous education become moot because the new school district is responsible for providing a due process hearing." Id. Accord M.P., 326 F.3d at 979-81; Smith v. Special Sch. Dist., No. 1, 184 F.3d 764, 767-68 (8th Cir. 1999). Under the version of the statute applicable to this case, due process hearings are "*conducted by the state*" and "must be held in the district responsible for ensuring that [a FAPE] is provided." Minn. Stat. § 125A.091, subd. 12(a) (2008) (emphasis added); see also M.M. v. Special Sch. Dist. No. 1, 512 F.3d 455, 460 & n.4 (8th Cir. 2008), cert. denied, 129 S. Ct. 452 (2009). Relying on Thompson and the applicable statute, the district court concluded C.N.'s IDEA claim failed as a matter of law because the District was no longer responsible for providing C.N. with a FAPE when she requested the hearing.

On appeal, C.N. suggests Thompson is no longer good law after the statutory amendment. Specifically, because the state now conducts all hearings, C.N. suggests it is immaterial whether a student requests a due process hearing against a particular district before or after leaving that district. We disagree. As the Thompson court recognized, the hearing process is in place to ensure that a "disabled child's educational needs are being met by the student's school district." 144 F.3d at 578. After all, "'[t]he purpose of requesting a due process hearing is to challenge an aspect of a child's education and to put the school district on notice of a perceived problem. Once the school district receives notice, it has the opportunity to address the alleged problem.'" M.M., 512 F.3d at 460 (quoting Thompson, 144 F.3d at 579). And like the statute in effect at the time of Thompson, the applicable statute reflects these principles–it too requires that any hearing be held in the district currently responsible for the student's education. See former Minn. Stat. § 120.17, subd. 3b(e) (requiring the hearing be held in the "district responsible for assuring that an appropriate program *is* provided"); Minn. Stat. § 125A.091, subd. 12(a) (requiring the hearing be held in the district "responsible for ensuring that a [FAPE] *is* provided") (emphases added).[5] C.N., however, did not request a due process hearing while the District was responsible for her education. Rather, by the time C.N. requested a hearing against the District, Atwater had already assumed responsibility for providing C.N. with an appropriate education geared toward addressing her specific needs (including any arising from deficiencies in C.N.'s prior education). Under these circumstances, we agree with the district court that C.N.'s IDEA claim fails but she may request a hearing against Atwater if she believes her educational needs are not currently being met.[6]

_____

[5]Nor are we persuaded by C.N.'s related argument regarding Minnesota Rule 3525.4110.

[6]To the extent C.N. suggests her September 2006 complaint to the MDE provided the District with adequate notice of her claim, we disagree. "The case law confirms that state and federal complaint procedures other than the IDEA due process hearing do not suffice for exhaustion purposes." Weber v. Cranston Sch. Comm., 212 F.3d 41, 53 (1st Cir. 2000). Nor does the filing of such a complaint satisfy Thompson,

-8-

Thompson, 144 F.3d at 580. We note, however, that C.N. indicated in her brief that she has no complaints regarding her current educational situation.

C.N. also contends she should be allowed to proceed with her IDEA claim, notwithstanding her failure to request a hearing before leaving the District, because an immediate transfer was necessary for her physical and psychological safety. Our case law suggests otherwise.[7] In M.P., a student was verbally harassed and physically assaulted by his classmates after a district employee disclosed his mental health condition to school authorities. 326 F.3d at 977-81. Although his parents engaged in repeated discussions with school authorities and otherwise tried to remedy the "intolerable situation" he endured through informal means, they did not request a due process hearing until after removing their son from the delinquent district and we affirmed dismissal of M.P.'s IDEA claim under Thompson. Id. at 979-81. Applying our prior precedents in this case, we are likewise bound to affirm dismissal of C.N.'s IDEA claim.[8]

which requires that a student request a due process hearing before transferring from the delinquent district if the student wishes to preserve his or her right to challenge the educational services provided by that district.

[7]C.N. also asserted a claim against the District for a violation of her rights under Section 504 of the Rehabilitation Act. "The IDEA exhaustion requirement applies to claims brought under section 504 . . . to the extent that those claims seek relief that is also available under the IDEA." M.Y. v. Special Sch. Dist. No. 1, 544 F.3d 885, 888 (8th Cir. 2008) (citing 20 U.S.C. § 1415(l)). After dismissing C.N.'s IDEA claim, the district court also dismissed this claim as "little more than [a] rehash [of the] IDEA claim." C.N. broadly asserts that the district court erred in dismissing this claim for failure to exhaust, but limits her remaining arguments to her constitutional claims. Thus, we affirm dismissal of this claim too, in light of our resolution of C.N.'s Thompson arguments.

[8]The concurring opinion suggests establishment of an "equitable" exception to the Thompson rule. Our opinion for the court, however, deals only with the facts before us in this litigation. According to the complaint, an allegedly offending teacher

## C.    Constitutional Claims

C.N. also challenges the dismissal of her 42 U.S.C. § 1983 claims for Fourth and Fourteenth Amendment violations.  As relevant to this appeal, C.N. asserted violations of her Fourth Amendment right to be free from unreasonable seizures and her Fourteenth Amendment right to substantive due process.  The district court dismissed those claims as to the District after concluding the complaint failed to identify an unconstitutional District policy or custom that caused the alleged injuries.  The court further concluded the individual defendants were entitled to qualified immunity because C.N. failed to allege either a Fourth Amendment or a substantive due process violation.  Finding no error, we affirm.

---

was educationally separated from the pupil almost two months before the parent saw fit to remove the pupil from the District into a private school.  Then, after removing the pupil from the District, the parent waited *ten months* to request a due process hearing.  So, whether or not an equitable exception to the rule can be validly formulated given the statutory mandates considered in Thompson, there is clearly no case for reaching such issue today.  As noted by Justice Ginsburg in her unanimous opinion for the Court in Union Pacific Railroad Co. v. Brotherhood of Locomotive Engineers, 130 S. Ct. 584, 596 (2009), in the absence of a live issue there is "no warrant to answer a question that may [or may not] be consequential in another case."

### 1. Individual Appellees

We first consider the allegations against the individual Appellees Van Der Heiden, Leedom, Smith and Simenson.[9] Qualified immunity protects individual state actors from liability under § 1983 unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Brockinton v. City of Sherwood, 503 F.3d 667, 671 (8th Cir. 2007). Because we agree with the district court that C.N. failed to allege a violation of her constitutional rights, we conclude the individual Appellees are entitled to dismissal on qualified immunity grounds.

### a. Fourth Amendment

Turning first to C.N.'s Fourth Amendment claim, the complaint alleges, in essence, that Van Der Heiden violated C.N.'s right to be free from unreasonable seizures by seizing, restraining, secluding and confining C.N., and the other Appellees failed to stop that conduct. The district court concluded C.N. failed to allege a Fourth Amendment violation because C.N.'s IEP authorized the use of restraints and seclusion to manage her behavior and thus, even if such actions amounted to seizures, they were not constitutionally unreasonable. On appeal, C.N. contends that ruling was in error, because Van Der Heiden (1) used those methods excessively and punitively, over J.N.'s alleged objections and despite the fact Ardhoff did not recommend the methods; and (2) also verbally and physically abused C.N.

---

[9]Carlson was named in his representative capacity only, and "[a] suit against a governmental actor in his official capacity is treated as a suit against the governmental entity itself." Brockinton v. City of Sherwood, 503 F.3d 667, 674 (8th Cir. 2007). We therefore resolve this claim below, in our discussion of C.N.'s § 1983 claim against the District.

A litigant may state a Fourth Amendment violation by alleging facts which indicate a seizure occurred and that it was unreasonable. See McCoy v. City of Monticello, 342 F.3d 842, 846 (8th Cir. 2003). Moreover, the Fourth Amendment's protections extend to actions by public school officials. See, e.g., Couture v. Bd. of Educ., 535 F.3d 1243, 1250-52 (10th Cir. 2008); Shade v. City of Farmington, 309 F.3d 1054, 1059-62 (8th Cir. 2002). Reasonableness is judged in light of the totality of the circumstances, however, McCoy, 342 F.3d at 848, and "[c]ontext is [therefore] critical to reasonableness analysis." Couture, 535 F.3d at 1251. And in a school setting, "[t]he Fourth Amendment's reasonableness inquiry . . . must account for 'the schools' custodial and tutelary responsibility' over the students entrusted to their care." Shade, 309 F.3d at 1059 (quoting Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 656 (1995)).

Applying those principles here, we conclude the district court properly dismissed C.N.'s Fourth Amendment claim. We first consider C.N.'s allegations relating to the use of restraints and seclusion. Assuming C.N. was seized within the meaning of the Fourth Amendment when Van Der Heiden employed those methods, we agree with the district court that any such seizures were not unreasonable. We have held that an authorized professional's treatment of a disabled person within the state's care is reasonable if his or her actions are "not a *substantial departure* from accepted professional judgment, practice, or standards." Heidemann v. Rother, 84 F.3d 1021, 1030 (8th Cir. 1996). Here, C.N.'s IEP authorized the use of restraints and seclusion and we agree with the district court that the IEP "set the standard for accepted practice." And although J.N. contends she objected to the use of those methods, she did not request a hearing to challenge those methods while C.N. attended school in the District. Because C.N.'s IEP authorized such methods, Van Der Heiden's use of those and similar methods like the thinking desk, even if overzealous at times and not recommended by Ardhoff, was not a substantial departure from accepted

-12-

judgment, practice or standards and was not unreasonable in the constitutional sense.[10] Indeed, as the Tenth Circuit recently observed, we would place educators in a very difficult position if we did not allow them "to rely on a plan specifically approved by the student's parents and which they are statutorily required to follow." Couture, 535 F.3d at 1252. For these reasons, the district court correctly concluded Van Der Heiden's use of those procedures did not violate C.N.'s Fourth Amendment rights.

C.N. also contends the district court ignored her abuse allegations in concluding she failed to allege a Fourth Amendment violation, and suggests those allegations state a claim for excessive force. This circuit has generally analyzed claims alleging excessive force by public school officials under the rubric of substantive due process, however, and not the Fourth Amendment. See, e.g., Doe v. Gooden, 214 F.3d 952, 955 (8th Cir. 2000) (noting that physical abuse by a teacher might amount to a constitutional violation if it was "literally shocking to the conscience"); see also Golden v. Anders, 324 F.3d 650 (8th Cir. 2003); Wise v. Pea Ridge Sch. Dist., 855 F.2d 560, 564-65 (8th Cir. 1988); accord Gottlieb v. Laurel Highlands Sch. Dist., 272 F.3d 168, 171-72 (3d Cir. 2001) (concluding the momentary use of force by a teacher against a student "does not effect a seizure of the student under the Fourth Amendment" and collecting cases applying the Fourteenth Amendment's "shocks the conscience" standard to claims alleging excessive force by public school officials) (quotation omitted). Accordingly, we agree with the district court that C.N. failed to

---

[10]C.N. also argues that Van Der Heiden's use of those procedures sometimes contravened state special education rules and was therefore unconstitutional. We disagree, as "[v]iolations of state law do not state a claim under 42 U.S.C. § 1983," which "guards and vindicates federal rights alone." Doe v. Gooden, 214 F.3d 952, 955 (8th Cir. 2000) (quotation omitted) (concluding school district officials' failure to report a teacher's alleged abuse of students as required by a state child abuse reporting statute did not amount to "unconstitutional misconduct"). Moreover, to the extent C.N. relies on facts not before the district court in making those arguments, we do not consider them. See ante at n.4.

allege a Fourth Amendment violation, and the individual defendants are entitled to qualified immunity on this claim. See Brockinton, 503 F.3d at 671-73.

### b.    Fourteenth Amendment

We now turn to whether C.N. has adequately pleaded a substantive due process claim. To do so, C.N. must allege actions by a government official which "violated one or more fundamental constitutional rights" and were "shocking to the contemporary conscience." Flowers v. City of Minneapolis, 478 F.3d 869, 873 (8th Cir. 2007) (internal quotation omitted). This is a high standard, as

> [s]ubstantive due process is concerned with violations of personal rights . . . so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power literally shocking to the conscience.

Golden, 324 F.3d at 652-53 (first alteration added) (quotation omitted). C.N. contends she has done so, pointing again to her allegations that Van Der Heiden physically and verbally abused the disabled children in her care, and the other individual defendants failed to stop that conduct.

As the Supreme Court has recently reiterated, however, "[a] pleading that offers [merely] 'labels and conclusions'" or "'naked assertion[s]' devoid of 'further factual enhancement'" does not plausibly establish entitlement to relief under any theory. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (third alteration in original) (quoting Twombly, 550 U.S. at 555, 557). Judged against these standards, C.N.'s complaint does not state a viable substantive due process claim. Some of the abuse allegations do not even identify C.N. as the victim of the alleged mistreatment–rather, the complaint simply asserts that on unspecified dates and under circumstances not described, Van Der Heiden allegedly mistreated unidentified disabled children in a

-14-

variety of ways. Such vague allegations neither provide the Appellees with fair notice of the nature of C.N.'s claims and the grounds upon which those claims rest nor plausibly establish C.N.'s entitlement to any relief. Twombly, 550 U.S. at 555 n.3, 570; see also id. at 565 n.10 (disapproving of factual allegations which fail to mention times, places, or persons involved in the specified events, and noting that a defendant seeking to respond to such "conclusory" allegations "would have little idea where to begin."). And even those allegations that are specific to C.N. are little more than general assertions of harm, lacking elaboration as to the context of the alleged incidents or resulting injuries. "[T]he scope of substantive due process is carefully circumscribed," Flowers, 478 F.3d at 875, and the pleading standard established by Federal Rule of Civil Procedure 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949. The vague allegations set forth in C.N.'s complaint do not plausibly state a claim for a violation of her substantive due process rights, and the individual defendants are entitled to qualified immunity on this claim as well. Brockinton, 503 F.3d at 671-73.[11]

## 2. The District

C.N. also challenges the dismissal of her § 1983 claims against the District. "'[T]he touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution . . . .'" McVay v. Sisters of Mercy Health Sys., 399 F.3d 904, 909 (8th Cir. 2005) (alterations in original) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)). Because C.N. has not alleged a violation of her constitutional rights, it

---

[11]We are not unsympathetic to C.N.'s arguments that her ability to provide additional factual allegations has been hampered by her communicative problems and the fact she has not been provided complete access to the District's records. We are, however, bound by the Supreme Court's directive that a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. C.N.'s vague allegations fall far short of that standard.

follows that the District cannot be liable under § 1983.  See id.; see also McCoy v. City of Monticello, 411 F.3d 920, 922 (8th Cir. 2005).

## III.   CONCLUSION

For the foregoing reasons, we affirm the dismissal of C.N.'s federal claims. C.N. may, of course, proceed with her state claims, which were dismissed without prejudice by the district court.

COLLOTON, Circuit Judge, concurring.

C.N. was a special education student at the Lincoln Elementary School in the Willmar Public Schools from kindergarten through the third grade.  She alleges that a special education teacher at the Lincoln school abused her physically and emotionally during that time, and that the school district deprived her of the free appropriate public education to which she is entitled under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(b)(6), (f), (i)(2)(A).  C.N. asserts that she left the Lincoln school in November 2006 to avoid further abuse, and completed the third grade at a Catholic school in Atwater, Minnesota.  She enrolled in the Atwater public school district for the fourth grade in the fall of 2007.  In October 2007, C.N. filed a complaint with the Minnesota Department of Education alleging that the Willmar school district denied her a free appropriate public education under the IDEA while she attended Lincoln.  She sought compensatory education services to make up for the educational deprivations that she allegedly suffered.  *See Miener ex rel. Miener v. Missouri*, 800 F.2d 749, 754 (8th Cir. 1986).

This court held in *Thompson ex rel. Buckhanon v. Board of the Special School District No. 1*, 144 F.3d 574, 578-79 (8th Cir. 1998), that a Minnesota student did not state a cause of action against a school district under the IDEA for failing to provide a free appropriate public education, because the student did not request a due process

hearing under § 1415(f) until after he left the district and enrolled in another school. In this case, an administrative law judge for the State of Minnesota dismissed C.N.'s claim under the IDEA based on *Thompson*, because C.N. did not file her complaint until after she left Willmar and enrolled in school at Atwater. The district court dismissed C.N.'s claim under the IDEA on the same ground.

Minnesota law has changed since *Thompson*, and it now provides that a due process hearing must be conducted by the State rather than by the school district in which the student is enrolled. Minn. Stat. § 125A.091, Subd. 12. Under the present system, the State presumably has authority to order compensatory relief from a school district in which the student previously was enrolled. *See* Minn. R. 3525.4110, Subp. 2(A)(3). To the extent that *Thompson* rested on the lack of authority for a new school district to order relief from a former school district, that rationale likely has been superseded by statute and rule.

The court's opinion correctly observes, however, that the rationale of *Thompson* for denying the student's claim against his former district was not so limited. Rather, *Thompson* also reasoned that "[t]he purpose of requesting a due process hearing is to challenge an aspect of a child's education and to put the school district on notice of a perceived problem." 144 F.3d at 579. The court explained that "[o]nce the school district receives notice, it has the opportunity to address the alleged problem." *Id.* Even though a hearing officer acting on behalf of the State of Minnesota now may have authority to order a former school district to provide equitable relief, *see* Minn. R. 3525.4110, Subp. 2(A)(3), the "notice" rationale of *Thompson* still prevails. *See M.M. ex rel. L.R. v. Special Sch. Dist. No. 1*, 512 F.3d 455, 460-61 (8th Cir. 2008).

C.N. argues that the notice requirement of *Thompson* is created "out of whole cloth," and that we should abandon it. It is true that the statute does not include an express requirement that a student provide notice to a school district, or request a due process hearing, as a precondition to obtaining equitable relief, except in the case of

reimbursement for private school placement. *See* 20 U.S.C. § 1412(a)(10)(C)(iii). Other courts have recognized, however, that because equitable considerations are relevant to fashioning relief under the IDEA, *see Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 374 (1985), the courts also may establish equitable preconditions to relief. The Second Circuit observed, for example, that "courts have held uniformly that reimbursement is barred where parents unilaterally arrange for private educational services without ever notifying the school board of their dissatisfaction with their child's IEP [individualized education plan]." *M.C. ex rel. Mrs. C*, 226 F.3d 60, 68 (2d Cir. 2000); *see also Town of Burlington v. Dep't of Educ. for Mass.*, 736 F.2d 773, 799 (1st Cir. 1984) (recognizing a reasonable distinction "between a unilateral parental transfer made after consultation with the school system, yet still an action without the system's agreement, and transfers made truly unilaterally, bereft of any attempt to achieve a negotiated compromise and agreement"). *Thompson* is best understood as applying a similar equitable consideration that requires notice to the school district of an alleged deficiency, and an opportunity to resolve the problem, before a student may obtain relief under the IDEA.

C.N. contends that if this court adheres to the judicially-created notice requirement of *Thompson*, then the court should recognize an exception when a student shows that continued enrollment in the school district likely would result in physical harm or serious emotional harm to the student. She notes that when Congress, in the context of private school reimbursement, "codif[ied] the previously recognized discretion of a court to reduce or bar reimbursement where parents fail to raise the appropriateness of an IEP in a timely manner," *M.C.*, 226 F.3d at 69 n.9, the statute also included exceptions. Notice is not required for private school reimbursement where the public school prevented the parent from providing notice, where compliance with the notice requirement "would likely result in physical harm to the child," or, in the discretion of the court, where compliance with the notice requirement "would likely result in serious emotional harm to the child." 20 U.S.C.

§ 1412(a)(10)(C)(iv).  C.N. argues that the equitable *Thompson* rule should be subject to similar exceptions.

I agree with the court, on this record, that no exception to *Thompson* is warranted, because C.N. has not pleaded facts that plausibly support a reasonable inference that continued enrollment at the Willmar school during the course of a due process hearing under the IDEA was likely to result in physical harm or serious emotional harm.  *See ante*, at 9 n.8; *Aschroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).  The court's decision, however, deals only with the facts of this action, *ante*, at 9 n.8, and does not foreclose the recognition of an equitable exception to the judicially-created *Thompson* rule on an appropriate set of facts.  Nor does the decision in *M.P. ex rel. K. v. Independent School District No. 721*, 326 F.3d 975 (8th Cir. 2003), preclude an exception to *Thompson*.  The court in *M.P.* never considered how the *Thompson* notice requirement should apply in cases of likely physical or serious emotional harm. *See M.P.*, 326 F.3d at 980-81.  Although the facts in *M.P.* might have supported an argument for an exception to *Thompson*, the point was not raised by the appellant or resolved by the court, and the decision is therefore not controlling on this question. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

In sum, while *Thompson* creates an equitable requirement that a student must request a due process hearing under the IDEA while still enrolled in the allegedly offending school district, this court has not considered the appropriateness of an exception to the notice requirement where continued enrollment likely would result in physical harm or serious emotional harm to the child.  It seems unlikely that Congress contemplated that a student in that situation must either (1) forfeit equitable remedies to which the child is entitled under the IDEA by leaving the offending district to avoid physical or serious emotional harm, or (2) remain in an abusive

environment that is likely to result in physical or serious emotional harm in order to pursue these equitable remedies. I concur on the understanding that the parameters of the *Thompson* rule in this context remain open for consideration.

_____