# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1485

_____

| | | |
|---|---|---|
| William Smith, by and through his parent and legal guardian, Ada Townsend, | * * * * | |
| Plaintiff - Appellant, | * * | |
| v. | * * | |
| | * | Appeal from the United States |
| Special School District, No. 1, | * | District Court for the |
| (Minneapolis); Peter Hutchinson, in his | * | District of Minnesota. |
| official capacity as Superintendent; | * | |
| Robert Wedl, in his official capacity | * | |
| only as Commissioner of the Minnesota | * | |
| Department of Children, Families and | * | |
| Learning, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted:  December 18, 1998

Filed:    July 15, 1999

_____

Before MURPHY, JOHN R. GIBSON, and MAGILL, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

William Smith appeals from dismissal of his claim under the Individuals with Disabilities Education Act, and the entry of summary judgment against him on his claims under 42 U.S.C. § 1983 (Supp. II 1996), the Americans with Disabilities Act, the Rehabilitation Act, and the Minnesota Human Rights Act. Smith sued the Special School District No. 1, its superintendent Peter Hutchinson, and the Commissioner of the Minnesota Department of Children, Families and Learning, currently Robert Wedl, for various allegedly inadequate responses to Smith's behavioral, emotional, and learning disabilities. We affirm.

For much of his life, Smith lived in Minneapolis, within the jurisdiction of the Special School District No. 1. Although he received special education in a long series of schools and other institutions, he alleges that what he received was not the statutorily-mandated free appropriate public education he was entitled to. However, before ever requesting a due process hearing from the Special School District, Smith moved outside the district to Bloomington. He then requested a special education due process hearing against both Bloomington and the Special School District under former Minn. Stat. § 120.17, subd. 3b(e) (1996) and the IDEA. Smith and Bloomington settled Smith's case. The Special School District moved to dismiss the request against it on jurisdictional grounds because section 120.17, subd. 1 imposed the duty to educate disabled children on the child's resident district, which was Bloomington, where Smith lived, not on Special School District No. 1, his former district. The hearing officer assigned to Smith's case denied the motion to dismiss, but the Special School District took an interlocutory appeal, and the Level Two hearing review officer granted the motion to dismiss for lack of jurisdiction.

After an appeal to the Minnesota Court of Appeals, which was dismissed for lack of timely service, Smith and his mother filed this case in the district court. The

district court[1] first dismissed Smith's IDEA claims against Wedl's predecessor and the Special School District for failure to bring this suit within the time allowed by the statute of limitations, which the district court determined to be thirty days from the decision of the hearing review officer. The court further remarked that Smith was not entitled to an IDEA hearing against the Special School District because he was not a student (or a resident) in the Special School District at the time of his request for a hearing. The court also dismissed Smith's section 1983 claim against the Special School District because Smith did not allege a custom, policy, or practice of the Special School District that interfered with Smith's right to a due process hearing.

The district court then entered summary judgment against Smith on his remaining claims. Smith's section 1983 claims against Wedl's predecessor were predicated on violations of Smith's procedural rights under the IDEA. 20 U.S.C.A. §§ 1400-1491o (now codified as amended at §§1400-87 (West Supp. 1999)). Most of Smith's claimed procedural rights under the IDEA had to do with rights to a hearing against the Special School District; the court had already decided these claims were not viable because Smith did not reside within the Special School District or attend school there and so had no right to a hearing against the district. The one IDEA procedural right not affected by Smith's change of residence was his claim that the Special School District failed to inform him that he would not preserve his right to IDEA remedies against the Special School District if he moved out of the district. The district court held that the evidence disproved this lack of notice allegation: the state's August 1992 brochure on Parents' Rights and Procedural Safeguards stated that a due process hearing would be "conducted by the district directly responsible for your child's education." The court held that this constituted notice to Smith that if he moved from the Special School District to another district, the new district would conduct his due process hearing.

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

Therefore, the court entered summary judgment for Wedl's predecessor in office on Smith's section 1983 claims.

The district court also entered summary judgment against Smith on his disability discrimination claim against the Special School District under the ADA, section 504 of the Rehabilitation Act, and the Minnesota Human Rights Act, Minn. Stat. § 363.03, subd. 5(1) and (2) (1998). (The parties agreed that the District's conduct would be measured by the same standard under each of these three statutes.) Applying Monahan v. State of Nebraska, 687 F.2d 1164, 1171 (8th Cir. 1982), cert. denied, 460 U.S. 1012 (1983), the court examined the record to determine whether there was evidence that the Special School District had acted in bad faith or committed gross misjudgment in its treatment of Smith. Examining each of Smith's allegations, the court held that the evidence viewed in the light most favorable to Smith did not support an inference of bad faith or gross misjudgment.

**I**.

We review the district court's grant of summary judgment de novo. Schoenfeld v. Parkway School Dist., 138 F.3d 379, 381 (8th Cir. 1998).

On appeal, Smith argues that the district court erred in dismissing his IDEA claims on the ground that Smith had no right to a due process hearing against a school district where he did not reside or go to school at the time he requested the hearing. After the district court's decision in this case, this court decided Thompson v. Special School District No. 1, 144 F.3d 574 (8th Cir. 1998), another Minnesota IDEA case. There, we held:

> Thompson has not stated a cause of action under IDEA because his request for a review comes after he left the District previously responsible for his education. . . . IDEA provides a mechanism for challenging the

education a student has been provided within a school district.  If a student changes school districts and does not request a due process hearing, his or her right to challenge prior educational services is not preserved.  Subsequent challenges to the student's previous education become moot because the new school district is responsible for providing a due process hearing.

Id. at 578-79.  Thompson compels affirmance of the district court's disposition of the IDEA claims.

Smith contended at oral argument that his case is distinguishable from Thompson because the record showed that Thompson's parent received notice of her right to request a due process hearing before moving out of the district.  Smith's counsel argued that Smith's parent did not receive such notice.  However, Smith's mother admitted in an affidavit that she received a copy of the "parents' rights" brochure in 1992.  (Smith and his mother moved to the Bloomington school district in October 1994.)  That brochure contained notice of the parent's right to request a due process hearing, including the statement:  "The hearing must be conducted by the district directly responsible for your child's education."  The school district where the child resides is responsible for the child's education.  Minn. Rev. Stat. §  125A.03(a) (1998) ("[E]very district must provide special instruction and services, either within the district or in another district for children with a disability who are residents of the district and who are disabled . . .") (containing same operative language as former section 120.17, subd. 1).  Smith argues that "it is . . . not clear if [his mother] understood the brochure."  The brochure is clear and simple. Smith does not contend that his mother was unable to read or that English was not her native language.  Cf. 34 C.F.R. § 300.505(b)(2) (if feasible, notice must be in native language or other mode of communication used by parent).  Smith's receipt of the brochure is sufficient to establish notice and to defeat Smith's attempt to distinguish Thompson.

Smith's counsel advises the court, without supplementing the record on appeal, that Smith has now moved back to Special School District No. 1 but continues to attend school in Bloomington. The Special School District's lawyer stated at oral argument that she had no information about this new development. Ordinarily, we decide a case on the record before the district court, see Fed. R. App. P. 10(a), but even without this procedural obstacle, the new fact does not save Smith's present IDEA claims. Smith's first two IDEA claims were that the Special School District improperly denied him a due process hearing; we have already held that the dismissal of the due process proceedings was proper at the time it occurred. Smith's third claim was that the Special School District did not inform Smith of his right to a hearing or that the hearing would be against the district where he was resident or went to school, a contention we have also rejected. As for Smith's fourth IDEA allegation, that he was deprived of a free appropriate public education, he may now seek relief against Special School District No. 1 based on current conditions,[2] but this is an entirely different claim from that for which Smith exhausted his administrative remedies and which he presented to the district court. The district court did not err in its disposition of that claim based on the record before it.

Because the district court's disposition of the IDEA claims is correct under Thompson, we need not reach the district court's alternative holding that Smith's claim was barred by the statute of limitations.

---

[2]Under Minnesota law, the usually clear-cut question of which district is responsible to provide a due process hearing may become more complex if, as Smith has now done, the student chooses to invoke options provided by the state to attend school outside his resident district. Minn. Rev. Stat. § 125A.09, subd. 6, 14 (1998); Minn. R. §§ 3525.0800, subp. 8, and 3525.3400. The question of which Minnesota school district (or districts) is responsible to provide Smith a due process hearing under these new conditions has not been briefed and its resolution depends on facts not present in the record before us. We therefore express no opinion on this state law question.

## II.

Smith contends that the district court erred in entering summary judgment in favor of Wedl's predecessor on Smith's section 1983 claim because Smith was not given notice that moving could moot his IDEA claim against Special School District No. 1.  Smith's mother admitted receiving the state pamphlet describing a student's IDEA remedies as the responsibility of "the district directly responsible for your child's education."  The district court did not err in holding that no evidence showed that Wedl's predecessor had deprived Smith of any possible right to notice under 20 U.S.C. § 1415(b) (1994) (effective until July 1, 1998).  Smith makes various other claims that he was not given notice of procedures pertaining to due process hearings, but in light of the facts that he had no right to a due process hearing against Special School District No. 1 and that he received such a hearing from Bloomington, the alleged lack of notice did not cause Smith any injury. See Miener v. State of Missouri, 800 F.2d 749, 755 (8th Cir. 1986).

## III.

Smith contends that the district court erred in entering summary judgment against him on his claims under the ADA, section 504 of the Rehabilitation Act, and the MHRA for discrimination against him on the basis of disability.  These statutes do not create "general tort liability for educational malpractice." Monahan, 687 F.2d at 1170. To recover under these statutes Smith must show gross misjudgment or bad faith on the part of school officials.  Hoekstra v. Independent School Dist. No. 283, 103 F.3d 624, 626 (8th Cir. 1996), cert. denied, 520 U.S. 1244 (1997); Brantley v. Independent School Dist. No. 625, 936 F. Supp. 649, 656 n.14 (D. Minn. 1996).

Smith relies on three episodes in which he claims the Special School District discriminated against him.  First, Smith contends that the program he attended at Andersen D, which was designed for children with severe emotional and behavioral

problems, "was not well suited for his learning disability needs." Even if this contention is true, it establishes at most a professional disagreement over the appropriate program, not bad faith or gross misjudgment. The record leaves no doubt that the Special School District enrolled Smith in the program at Andersen D in an attempt to deal with his emotional and behavioral difficulties.

Smith next claims that he was "denied access to . . . Franklin Middle School and thus was without educational services" from February 4, 1992, until May 5, 1992. Smith was sent to Franklin as part of an administrative transfer from Anwatin. At Anwatin, Smith had been in trouble and staff asked permission to assess him for special education services. Smith's mother refused to grant permission, and after four suspensions, Anwatin administration proposed the transfer to give Smith a "fresh start." Although Smith was suspended from Franklin on his first full day of school, the record indicates that Smith was enrolled at Franklin from February 4 through February 28, 1992, and that he transferred to the Plymouth Youth Center as of March 2, 1992. Furthermore, during the time that Smith was enrolled at Franklin, the principal there was actively involved in trying to work out a suitable arrangement for Smith, including persuading Smith's mother to give permission for an assessment. Smith's claim of exclusion apparently refers to the three-day suspension meted out on his first full day of school at Franklin after he made an obscene gesture and insulted a teacher. There is no showing of a bad faith exclusion of Smith.

Smith's last point is that he did not receive special education for his disabilities at Roosevelt High School, which he attended for about a month after he left the State Correctional Facility for Juveniles in Sauk Centre, Minnesota and before he moved to Bloomington. Smith points to no facts showing he sought an Individual Education Plan at Roosevelt or that the school had the chance to formulate a plan and failed to do so. See Schoenfeld, 138 F.3d at 382.

A school psychologist who examined Smith and reviewed his school records stated in his report, "It is hard to imagine a student receiving more in the way of educational or therapeutic assessment and intervention than William has received throughout his life. The sheer volume of information regarding William is astounding." Though Smith's expert may disagree with particular choices that were made and may have done better with Smith had she been in charge of his education, nothing in her opinion or the rest of the record amounts to a showing that the Special School District acted in bad faith or committed gross misjudgment in handling Smith's case.

A further word is in order. What we have said today decides those claims asserted by Smith which were ruled upon by the district court and which we now affirm. Smith, as expressed during oral argument, is entitled to a free appropriate public education under the fabric of federal and state laws. Even though Smith is approaching the age of 21, the age at which free education ordinarily ceases in Minnesota, Minn. Stat. 120A.20 subd. 1, he may have a continuing right to ask for an individualized education program by the district in which he is a resident.[3] Our decision today in no way limits his rights to pursue future relief under state and federal laws.

We affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]See 20 U.S.C.A. § 1412(a)(1) (1999 West Supp.) (FAPE must be made available through twenty-first year of age, with exceptions) and Minn. Stat. § 120A.20, subd. 3 (students 21 years and older may be admitted to secondary school under Minn. Stat. § 124 D.68, subd. 2).