

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| A.H., a Minor, by and through her Grandmother and Next Friend, SANDRA D'AVIS, | ) ) ) ) | |
| Appellant, | ) ) | WD77837 |
| v. | ) ) ) | OPINION FILED: April 7, 2015 |
| INDEPENDENCE SCHOOL DISTRICT, | ) ) ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Robert M. Schieber, Judge**

**Before Division Two:**  Anthony Rex Gabbert, Presiding Judge, and
Joseph M. Ellis and Karen King Mitchell, Judges

Sandra D'Avis filed a due process complaint on behalf of her granddaughter, protesting the Independence School District's (District) denial of special education services under the Individuals with Disabilities Education Act (IDEA). The hearing panel dismissed the complaint because it was not filed while D'Avis's granddaughter attended the District. We affirm.

## Facts

D'Avis is the grandmother and guardian of A.H., a school-aged child who was born prematurely. Complications from A.H.'s premature birth have led to a number of health issues,

including lung, vision, and hearing problems. These problems have, at various times, affected A.H.'s ability to learn in the classroom environment.

In the fall of 2009, A.H. attended a Head Start program at Hanthorn Early Childhood Center, a preschool in the District. While at Hanthorn, A.H. was found eligible for services under the IDEA.[1] She received an Individualized Educational Program (IEP) that included special education services for speech, occupational therapy, physical therapy, and door-to-door transportation to and from school.

In the 2010-11 school year, A.H. attended kindergarten at Sugar Creek Elementary, a District school. At the beginning of the year, A.H. continued receiving all services she had received at Hanthorn, with the exception of door-to-door transportation. Because A.H.'s IEP had expired, an evaluation team met in November of 2010 to conduct an evaluation of A.H.'s special education eligibility and needs. The team determined that A.H. no longer qualified for services because her educational achievement was commensurate with her ability without special education services. A.H. has not received special education services since this determination.[2]

Following the determination, D'Avis requested an independent evaluation of A.H. in order to determine whether she qualified for services under the IDEA. The District agreed, and paid for independent evaluations "in the areas of Vision, General Intelligence and Memory, Adaptive Behavior, Motor, . . . and Speech." On June 30, 2011, following the additional testing, the District issued a report determining that A.H. did not qualify for services under IDEA.

---

[1] "In 2004, the IDEA was reauthorized and amended by the Individuals with Disabilities Education Improvement Act ('IDEIA'), Pub.L. No. 108-446, 118 Stat. 2647. We continue to refer to the statute, as amended, by the familiar acronym: IDEA." *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 445 n.1 (2d Cir. 2014).

[2] The District did find A.H. eligible to receive services under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Because A.H. left the District prior to a determination of what services would be provided, the record of what she would have received is not entirely clear.

On August 16, 2011, A.H. began attending Nativity of Mary, a private school that has no affiliation with the District, but lies within the District's geographical boundaries. A.H. attended Nativity of Mary until 2014, when A.H. began attending Horizon Academy, a private school located in Roeland Park, Kansas, outside the geographic boundaries of the District.

On August 25, nine days after A.H. started school at Nativity of Mary, D'Avis filed a due process complaint with the Department of Elementary and Secondary Education (DESE), challenging the District's determination during the previous year that A.H. was not entitled to services. D'Avis subsequently filed two amended complaints. DESE convened a three-member panel to hear the matter.[3] The complaints were not the picture of clarity, but the panel interpreting D'Avis's complaints determined that the issues for review were whether the District erred either: (1) in its November 15, 2010 determination that A.H. did not qualify for special education services; or (2) in its June 30, 2011 determination following the additional testing, that A.H. did not qualify for services. D'Avis cited the District's "[o]ffering only 3 accommodations and no door to door services" as the "two main reasons" for filing her complaint. D'Avis requested that the District either pay for placement in private school and provide occupational and physical therapy services to A.H. during that placement, or place A.H. in a school within the District with door-to-door transportation and other special education services.

Before the hearing, the District filed a Motion to Dismiss the complaint, arguing that A.H.'s enrollment in private school before filing the complaint barred the action under federal authority. The hearing panel ordered the hearing bifurcated in order to first hear testimony and

---

[3] Under the version of section 162.961.1 RSMo in effect when the complaint was filed, DESE was required to appoint "a hearing panel of three persons," including a chairperson, who was required to "be an attorney licensed to practice law in this state." This section was amended in 2012 by SB595 to vest the Administrative Hearing Commission with jurisdiction over such appeals.

argument on the District's Motion to Dismiss.[4]  After two days of evidence, the panel agreed

with the District that, because A.H. withdrew from the District before filing her due process

complaint, her claim was barred.

The Circuit Court of Jackson County affirmed the hearing panel's decision.  D'Avis

timely appealed.

**Standard of Review**

"In an appeal following judicial review of an agency's administrative action, [an

appellate court] reviews the decision of the agency, not the circuit court." *TAP Pharm. Prods.,*

*Inc. v. State Bd. of Pharmacy*, 238 S.W.3d 140, 141 (Mo. banc 2007).  Under section 536.140.2,[5]

our review

> involves a determination of whether the agency's action:  is in violation of
> constitutional provisions; is in excess of the statutory authority of the agency; is
> unsupported by competent and substantial evidence on the record; is otherwise
> unauthorized by law; is made upon unlawful procedure or without a fair trial; is
> arbitrary, capricious, or unreasonable; or involves an abuse of discretion.

*Schumer v. Lee*, 404 S.W.3d 443, 446 (Mo. App. W.D. 2013).

**Analysis**

**I.     Statutory Framework of IDEA**

Any state receiving federal funding under the IDEA must provide a free appropriate

public education ("FAPE") to children with disabilities, and it must be tailored to the unique

needs of each child by way of an IEP.[6]  20 U.S.C. § 1412(a)(1)(A), (a)(4); *Bd. of Educ. of*

---

[4] At the hearing on the Motion to Dismiss, D'Avis argued and presented evidence that the move to private school was necessary in order to avoid physical harm or serious emotional harm to A.H.  The hearing panel determined that there would not have been a serious risk of physical or emotional harm had A.H. remained at school in the District.  D'Avis does not challenge this determination.

[5] All statutory citations are to the Revised Statutes of Missouri (2000), as currently updated, unless otherwise noted.

[6] An IEP is a written statement that "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed

4

*Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 181 (1982). Congress enacted the IDEA to ensure that children with disabilities are provided with a FAPE that "'emphasizes special education and related services designed to meet their unique needs [and] to [en]sure that the rights of [such] children and their parents or guardians are protected.'" *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239 (2009) (quoting *Sch. Comm. of Burlington, Mass. v. Dep't of Educ.*, 471 U.S. 359, 367 (1985)). "The primary tool for implementing the aims of the IDEA is the IEP, which 'tailor[s] the statutorily required "free appropriate public education" to each child's unique needs.'" *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 592 (8th Cir. 2013) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)). "IEPs are created by an 'IEP Team,' which is composed of the special education student's parents, at least one regular education teacher, at least one special education teacher and a representative of the local school district qualified to provide special education services." *Dydell v. Taylor*, 332 S.W.3d 848, 858 n.6 (Mo. banc 2011); *see* 20 U.S.C. § 1414(d)(1)(B).

"Missouri incorporated the IDEA into state law in [s]ection 162.670 . . . ." *Hellmann v. Union Sch. Dist.*, 170 S.W.3d 52, 64 (Mo. App. E.D. 2005). The statute provides:

> it is hereby declared the policy of the state of Missouri to provide or to require public schools to provide to all handicapped and severely handicapped children within the ages prescribed herein, as an integral part of Missouri's system of gratuitous education, a free appropriate education consistent with the provisions set forth in state and federal regulations implementing the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. Section 1400 et seq. and any amendments thereto.

§ 162.670.

---

instruction and services that will enable the child to meet those objectives." *Honing v. Doe*, 484 U.S. 305, 311 (1988).

## II.    D'Avis's Claim of Error

In her single point, D'Avis asserts that we should overturn the hearing panel's dismissal of her claim because:  (1) the Eighth Circuit precedent holding that a party must file a due process complaint prior to leaving the District is incorrect as a matter of law and should be rejected; and (2) even if the Eighth Circuit precedent is applicable, her complaint was not barred because she sought prospective relief in the form of tuition reimbursement and attempted to enforce the District's continuing obligation (even after A.H. left the District) to identify, locate, and evaluate A.H. under the IDEA's "child find" provisions.  Because we find that the failure to file a due process complaint before A.H. left the District bars D'Avis's claims for both a FAPE from the District and tuition reimbursement, and because the District's child find obligations do not give rise to an individual right that can be enforced through a due process hearing, we affirm.

### A. D'Avis's claims for both a FAPE from the District and tuition reimbursement are barred by D'Avis's failure to file a due process complaint before removing A.H. from the District.

The IDEA requires that the State provide *procedural safeguards intended to protect affected* children and guardians.  *Bailey*, 721 F.3d at 592.

> These safeguards include the right to examine all relevant records pertaining to the identification, evaluation, and educational placement of their child; prior written notice whenever the responsible educational agency proposes (or refuses) to change the child's placement or program; an opportunity to present complaints concerning any aspect of the local agency's provision of a free appropriate public education; and an opportunity for "an impartial due process hearing" with respect to any such complaints.

*Honig*, 484 U.S. at 312 (quoting 20 U.S.C. §§ 1415(b)(1), (2)).  "A party aggrieved by the outcome of an IDEA due process hearing may challenge the outcome before the state educational review agency."  *Bailey*, 721 F.3d at 592; 20 U.S.C. § 1415(g)(1).  Then, "any party aggrieved by the findings and decision [of the state agency] . . . shall have the right to bring a civil action

6

with respect to the complaint presented . . . in any State court of competent jurisdiction or in a district court of the United States." 20 U.S.C. § 1415(i)(2)(A).

The hearing panel relied on *Thompson v. Board of Special School District No. 1*, 144 F.3d 574 (8th Cir. 1998), to support its finding that an IDEA claim is barred when no due process complaint is filed until after the child leaves the district. In *Thompson*, a parent removed her son from public school and enrolled him in a charter school after becoming dissatisfied with the education her son was receiving. *Id*. at 577. The parent then requested a due process hearing from the agency to challenge her son's assessment, as well as the education that he had received while at the previous district. *Id*. The agency hearing officer dismissed the complaint. The Eighth Circuit subsequently upheld the dismissal because the mother had "not stated a cause of action under IDEA because h[er] request for a review c[a]me[] after he[r son] left the District previously responsible for his education." *Id*. at 578. The court noted that "[t]he purpose of requesting a due process hearing is to challenge an aspect of a child's education and to put the school district on notice of a perceived problem." *Id*. at 579. "Once the school district receives notice, it has the opportunity to address the alleged problem." *Id*. The court concluded that, under mother's "theory, a school would be potentially liable for unanticipated costs for alleged problems of which it is totally unaware."[7] *Id*. This holding has remained settled law in the Eighth Circuit. *See, e.g., Smith ex rel. Townsend v. Special Sch. Dist. No. 1*, 184 F.3d 764, 768 (8th Cir. 1999) (holding that a district properly dismissed a student's due process proceedings under *Thompson*); *M.P. ex rel. K.P. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975, 981 (8th Cir. 2003) (affirming the dismissal of a student's IDEA claims under *Thompson*); *C.N. v. Willmar*

---

[7] Subsequent Eighth Circuit cases have found lack of notice when no formal due process complaint was filed, even though the district was aware that the parent/guardian was dissatisfied with the education provided. *M.P. ex rel. K.P. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975, 977-81 (8th Cir. 2003); *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 627-32 (8th Cir. 2010).

*Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 636 (8th Cir. 2010) (Colloton, J., concurring) (same).

D'Avis argues that *Thompson* and its progeny are wrongly decided and that we should simply decline to follow the Eighth Circuit's interpretation of the IDEA. D'Avis points to federal district court decisions that have allowed parents to file complaints after withdrawal of the child from the district. *See, e.g., L.R.L. ex rel. Lomax v. D.C.*, 896 F. Supp. 2d 69, 81 (D.D.C. 2012) ("when a student leaves a school district, which allegedly failed to provide a FAPE, the school district may not avoid its obligations under the IDEA and must provide a due process hearing," even if the due process filing does not come until after withdrawal from that district);[8] *Lewis Cass Intermediate Sch. Dist. v. M.K. ex rel. J.K.*, 290 F. Supp. 2d 832, 838 (W.D. Mich. 2003) ("the Court finds no reason that a district should deny a student his right to a due process hearing regarding compensatory educational services simply because the student requested his hearing after, rather than prior to, moving from the district"); *but see Steven H. v. Duval Cnty. Sch. Bd.*, No. 3:99-cv-500-J-20TJC, 2001 WL 36341690, at *3 (M.D. Fla. May 8, 2001) (guardian must file due process complaint "*while* the student is attending school in the

---

[8] We note that *Lomax*, in declining to follow *Thompson*, predicts dire consequences and inhumane treatment by virtue of not allowing claims when they are filed post-withdrawal:

> If [a district]'s IDEA obligations were extinguished upon a student leaving the [district], parents would be placed in the untenable situation of choosing between the lesser of two evils: either leaving their child in an unsatisfactory situation while waiting for a lengthy administrative appeals process to play out in order to preserve their right to compensatory education as a remedy, or remedying the situation immediately by moving the child to a new [district] while forfeiting any right they had to an administrative review and any subsequent compensatory education. The Court is not prepared to place that burden on parents.

*L.R.L. ex rel. Lomax v. D.C.*, 896 F. Supp. 2d 69, 82 (D.D.C. 2012). But these concerns seem overstated because *Thompson* and its progeny do not require the full exhaustion of all administrative remedies, including the full hearing, before the child is removed from the district. Rather, *Thompson* requires merely the filing of a complaint "to put the school district on notice of a perceived problem" before the child is moved. *Thompson*, 144 F.3d at 579 (8th Cir. 1998). Additionally, Eighth Circuit precedent leaves open the possibility, and the hearing panel below explicitly held, that there is an exception to the rule barring untimely claims when "an immediate transfer was necessary for [the student's] physical and psychological safety." *C.N.*, 591 F.3d at 631, 632 n.8. Despite arguing below that A.H. meets this exception, D'Avis has abandoned this argument on appeal.

8

public school district to ensure that the school district is adequately notified of the alleged problem and given an opportunity to cure it").

While there is some disagreement among federal district courts, the Eighth Circuit is presently the only federal circuit court to have directly addressed this issue. And the law in the Eighth Circuit is clear: an IDEA claim is barred when the guardian does not request a hearing before the child leaves the District. *C.N.*, 591 F.3d at 636. Because the Eighth Circuit is the only federal appellate court to have interpreted this aspect of federal legislation, and it has an obvious geographic connection with Missouri, we find its interpretation of federal law highly persuasive. "While federal court decisions are not binding on this court, they are persuasive authority." *Dilley v. Valentine*, 401 S.W.3d 544, 552 (Mo. App. W.D. 2013); *Buemi v. Kerckhoff*, 359 S.W.3d 16, 22 (Mo. banc 2011) ("'While not binding authority, the federal cases [interpreting federal rules nearly identical to Missouri's] are highly persuasive.'" (quoting *Comm. for Educ. Equal. v. State*, 878 S.W.2d 446, 451 (Mo. banc 1994))).

Moreover, there is nothing unreasonable about the Eighth Circuit's timely filing requirement. The IDEA is based largely on equitable principles. A court "shall grant such relief as the court determines is appropriate," 20 U.S.C. § 1415(i)(2)(C)(iii); "equitable considerations are relevant in fashioning relief," *Burlington*, 471 U.S. at 374; "and the court enjoys 'broad discretion' in so doing." *Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 16 (1993) (quoting *Burlington*, 471 U.S. at 369); *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 453 (2d Cir. 2014) (A "broad spectrum of equitable relief [is] contemplated under the IDEA."). It is hardly unusual, when fashioning equitable relief, for "the courts also [to] establish equitable preconditions to relief." *C.N.*, 591 F.3d at 636 (Colloton, J., concurring). Under *Thompson*, all that is required is for the parent to put the specific concerns in writing "to

9

put the school district on [formal] notice of a perceived problem," because "[o]nce the school district receives notice, it has the opportunity to address the alleged problem."[9] *Thompson*, 144 F.3d at 579; *C.N.*, 591 F.3d at 636 (Colloton, J., concurring) ("*Thompson* is best understood as applying a similar equitable consideration that requires notice to the school district of an alleged deficiency, and an opportunity to resolve the problem, before a student may obtain relief under the IDEA.").

Additionally, the refusal to follow the Eighth Circuit would place the tribunal responsible for hearing appeals—the Administrative Hearing Commission under current law—in an untenable position. § 162.961.1. The question of whether an individual has timely filed a due process complaint bears upon whether the hearing tribunal is barred from hearing the complaint. And an appeal from a final decision of the tribunal can go either to state or federal court. 20 U.S.C. § 1415(i)(2)(A) (appeals may be brought "in any State court of competent jurisdiction or in a district court of the United States."). Thus, whether a due process complaint stated a claim would depend entirely upon whether the appeal of the tribunal's decision were filed in state or federal court, something that cannot be known at the time that the action before the administrative tribunal is commenced. Thus, the tribunal would be placed in the impossible position of having to make a threshold decision regarding whether a claim is barred, based solely on blind speculation about a future action that a party *might* take: filing an appeal in state court, federal court, or not at all. We find such an approach to be untenable.

D'Avis also argues that *Thompson* did not bar her claim because she is seeking prospective relief in the form of tuition reimbursement. D'Avis argues that the United States

---

[9] While D'Avis also cites Missouri law, she makes no state law claim distinct from her argument that her appeal should be allowed to continue as a matter of interpretation of federal law. Thus we do not address whether Missouri law, including Chapters 536 or 162, provide for a broader right to administrative review of due process complaints than the IDEA as presently interpreted by the Eighth Circuit.

10

Supreme Court has recognized "that IDEA authorizes reimbursement for the cost of private special-education services when a school district fails to provide a FAPE," even if the child no longer attends school in the district. *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 237-38 (2009). But *Forest Grove* never addressed the issue of whether a parent must timely file a due process complaint in order to preserve an IDEA challenge. In *Forest Grove*, the Supreme Court "granted certiorari to determine whether [the IDEA] establishes a categorical bar to tuition reimbursement for students who have not previously received special-education services under the authority of a" school district. 557 U.S. at 236-37. The Court does not address issues that "fall[] outside the question on which [it] granted certiorari." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 43 n.5 (1998); U.S.S.C. Rule 14.1(a) ("Only the questions set forth in the petition [for certiorari], or fairly included therein, will be considered by the Court"). Thus the Court was not presented with, and did not address, whether the failure to file a due process complaint before leaving the school district serves as a bar to challenging whether the district offered a FAPE while the student attended the district.

It is true that if the guardian of a disabled child believes that the school district has failed to provide the child with a FAPE as required under the IDEA, she is permitted to place the child in a private school, at her own financial risk, and seek tuition reimbursement from the school district. *Forest Grove*, 557 U.S. at 237-38; 20 U.S.C. § 1412(a)(10)(C)(i) (The IDEA does not "require a [district] to pay for the cost of education, including . . . related services, of a child with a disability at a private school or facility if that agency made a [FAPE] available to the child and the parents elected to place the child in such private school or facility."). But that does not mean that the claim for reimbursement does not need to be preserved by the timely filing of a complaint. Indeed, *Thompson* involved a claim for certain tutoring costs, and thus the court

11

addressed the issue of reimbursement. "'Recovering tuition [or costs] is a remedy only if the free and appropriate public education (FAPE) guarantee has been violated, exhaustive administrative remedies have been tried before placement, and the school has been notified.'" *Thompson*, 144 F.3d at 579 (quoting CINDY L. SKARUPPA, ANN BOYER & OLIVER EDWARDS, *Tuition Reimbursement for Parent's Unilateral Placement of Students in Private Institutions: Justified or Not?*, 114 Educ. Law Rep. 353, 354 (West 1997)). While the statement in *Thompson* regarding tuition may be dicta, that statement is consistent with the *Thompson* court's finding regarding other costs associated with removing the child from district schools and with the underpinning for the *Thompson* court's entire rationale: "a school would be potentially liable for unanticipated costs for alleged problems of which it is totally unaware" if parents were allowed to file complaints after the child leaves the district. *Id*.

Courts have recognized that various types of compensatory relief,[10] as well as tuition reimbursement, are available when a district fails to provide a FAPE. However, even after *Forest Grove*, the Eighth Circuit has continued to require the timely filing of a due process complaint before tuition reimbursement or other compensatory relief can be sought. In *J.B. ex rel. Bailey v. Avilla R-XIII School District*, in which the plaintiffs sought "compensatory education, reimbursement for IEP-related expenses, and attorneys' fees" for an alleged IDEA violation, the court held that "the IDEA's exhaustion requirement remains the general rule,

---

[10] Where a school district has failed to provide a FAPE, "'a court will evaluate the specific type of relief that is appropriate to ensure that a student is fully compensated for a school district's past violations of his or her rights under the IDEA and develop an appropriate equitable award.'" *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 498-99 (3d Cir. 2012) (quoting *Ferren C. v. Sch. Dist. of Philadelphia*, 612 F.3d 712, 720 (3d Cir. 2010)). Where a student's claim "concerns obligations the District allegedly had in the past and failed to meet[, t]he remedy sought is compensatory." *Indep. Sch. Dist. No. 284 v. A.C. ex rel. C.C.*, 258 F.3d 769, 774 (8th Cir. 2001). Compensatory education and reimbursement are the two primary compensatory remedies available. *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 593-94 (8th Cir. 2013). "Compensatory education is a judicially-created remedy," some examples of which include "order[ing the district] to pay [student's] new district or to contract with a local provider in his new home in order to provide tutoring, counseling, or other support services," in order to make up for the education a student should have received. *D.F*, 694 F.3d at 496, 499. Reimbursement "includes reimbursement to parents for private school tuition and related expenses" incurred while the district did not offer a FAPE. *Sch. Comm. of Burlington, Mass. v. Dep't of Educ.*, 471 U.S. 359, 367 (1985).

regardless of whether the administrative process offers the particular type of relief that is being sought." 721 F.3d at 595 (quoting *M.P.*, 326 F.3d at 980).

And courts have continued to hold that parents who unilaterally enroll their child in private school before filing a due process complaint "cannot [later] attempt to exhaust their administrative remedies," regardless of whether the claim is for reimbursement, compensatory education, or both. *See, e.g., A.B. ex rel. Barclift v. Westonka Indep. Sch. Dist. 277*, Civil No. 14-0466 (MJD/HB), 2015 WL 321415, at *4 (Jan. 26, 2015) (citing *Thompson*, 144 F.3d at 578-79); *C.N.*, 591 F.3d at 632; *I.E.C. v. Minneapolis Pub. Sch., Special Sch. Dist. No. 1*, 34 F. Supp. 3d 1006, 1016 (D. Minn. 2014) ("The Court is bound by *Thompson*; its holding is straightforward and it squarely applies to the present case."). This is consistent with prior cases in which *Thompson* was followed, regardless of the requested remedy. *Steven H.*, 2001 WL 36341690, at *3 (dismissing request for reimbursement where guardian failed to file due process complaint "*while* the student [was] attending school in the public school district"); *L.K. ex rel. J.H. v. Bd. of Educ. for Transylvania Cnty.*, 113 F. Supp. 2d 856, 860 (W.D.N.C. 2000) (parent is not entitled "to reimbursement for tuition for a private school . . . in which she enrolled [student] during a time when there were no proceedings pending" with the district); *M.P.*, 326 F.3d at 980 (school district not liable to provide compensatory services when child was placed in private school prior to filing due process complaint).

D'Avis argues that applying *Thompson* leaves her without a remedy.[11] We disagree. Although D'Avis cannot seek reimbursement for tuition previously paid, while A.H. attended

---

[11] We note that all D'Avis needed to do in order to preserve her claim was to file a due process complaint sufficient to put the District on notice of her concerns. *Thompson*, 144 F.3d at 579. Presumably, this is to allow the District to change its position or to take interim action, to minimize cost to the District and disruption to the student. The record demonstrates that D'Avis was aware of the complaint process since at least January of 2011. Despite the District issuing its decision in June of 2011, D'Avis did not file her due process complaint until approximately two months later, after A.H. had been enrolled in private school and the fall semester began. At this point, D'Avis was

school within the District's borders, the District remained subject to the requirement of offering A.H. a FAPE if she requested it. If a student is enrolled at a private school because of a parent's unilateral decision, the school district does not have an obligation to maintain an active IEP. 20 U.S.C. § 1412(a)(10)(C)(i). But a guardian is entitled to have the District perform a reevaluation of the student's IEP once a year, which the District must complete within 60 calendar days of the request. 20 U.S.C. § 1414(a)(2)(A)(ii); (a)(1)(C)(i)(I). In other words, D'Avis could have requested that the District reevaluate A.H. after she began attending Nativity of Mary school. Nothing "authorizes the school district to ignore a parent's request that an IEP be developed for a child simply because the child is presently enrolled in a private school." *D.C. v. Vinyard*, 971 F. Supp. 2d 103, 111 (D.D.C. 2013). "To the contrary, the statute provides that '*each* child with a disability' shall be reevaluated at the request of the child's parent." *Id.* (quoting 20 U.S.C. § 1414(a)(2)). And if the reevaluation results in either an IEP that the guardian does not believe provides a FAPE, or the refusal to offer an IEP at all, the guardian may file a complaint. *Forest Grove*, 557 U.S at 238-39. Such complaint may include a request that the district pay for private school tuition, which is an available remedy under IDEA.[12] *Id.* But again, the district's obligation to offer an IEP is contingent on "the child's [guardian] request[ing] a reevaluation," 20 U.S.C. § 1414(a)(2)(A)(ii), and D'Avis does not allege that she has ever requested a renewed IEP following A.H.'s departure from the District.

already incurring costs, the District is not in a good position to make an accommodation, and the student has already been subject to disruption.

[12] It may seem incongruous at first blush that the parent can request another IEP after a denial and then file a complaint requesting essentially the same remedy the next year. But this result makes sense in at least two respects. First, while a school district should not be held liable for potentially costly remedial measures for periods in which it was not adequately put on notice to remedy any potential problems, a subsequent request for IEP and, if necessary, timely complaint, will allow a district to engage more fully with the child and parent in order to attempt to reach a mutually beneficial outcome. Second, especially considering that the IDEA often involves young children, in a year's time a given claimant's situation may have changed substantially enough that the district and parent would agree that the child should be returned to the district and/or provided with specified services. Additionally, even where a parent timely files a claim and loses on the merits, nothing within the IDEA explicitly bars a parent from requesting an IEP the following year and then filing a challenge to the new IEP, potentially making similar claims and seeking similar relief. *See* 20 U.S.C. § 1415.

Because D'Avis neither filed a complaint that the District was not providing a FAPE, nor requested reimbursement for private tuition until after A.H. withdrew from the District, D'Avis's claims are barred.

### B. The District's child find requirements do not revive D'Avis's claim.

D'Avis next argues that, even if this Court follows *Thompson*, the hearing panel nevertheless erred in dismissing her complaint because the District has an ongoing obligation to provide services to A.H. under the "child find" provisions of the IDEA. Specifically, D'Avis argues that, because A.H. attended school within the geographic boundary of the District at the time of the hearing, the District had a continuing obligation to identify, locate, and evaluate A.H.'s needs; therefore, prospective relief was available and her claims were not barred.[13] This argument fails because D'Avis misapprehends the nature of the District's child find obligations in that she incorrectly assumes the child find provision provides an individual right to access special education services that is subject to due process procedures.

In addition to the FAPE requirements, the IDEA provides that any state receiving federal funding must have policies and procedures in place to identify, locate, and evaluate all disabled children residing in the state who are in need of special education and related services. 20 U.S.C. § 1412(a)(3)(A). This is known as the "child find" obligation, and applies to all children with disabilities in need of special education, regardless of whether they are enrolled in public or private schools. *Id.*, § 1412(a)(10)(A)(ii)(I); 34 C.F.R. § 300.131(a) ("Each [district] must locate, identify, and evaluate all children with disabilities . . . in private, including religious, elementary schools and secondary schools located in the school district . . . ."). And once the

---

[13] The District claims that this argument was not preserved because it was not presented to the hearing panel. Indeed, D'Avis's complaint contains no reference to child find requirements and no allegations that the District failed to identify, locate, and evaluate A.H. while she was enrolled in private school. D'Avis responds that she raised the District's child find obligations in response to the District's motion to dismiss. Because we determine that child find does not provide an individual right, we need not determine whether a child find claim was preserved.

15

District has made a determination of the number of students requiring special education services attending private school within the District, it is obligated "to allocate a proportionate amount of funds received from the federal government to [provide services to] eligible students in private schools." *D.L. ex rel. K.L. v. Baltimore Bd. of Sch. Comm'rs*, 706 F.3d 256, 260 (4th Cir. 2013); 20 U.S.C. § 1412(a)(10)(A)(i).[14]

However, the child find obligation is not a requirement that the District provide special education services to every qualified child attending a private school. Child find does not require Districts "to pay the costs of special education services for a particular child; [Districts] are required only to spend proportionate amounts [of federal funds] on special education services for this class of students as a whole." *Foley v. Special Sch. Dist. of St. Louis Cnty.*, 153 F.3d 863, 865 (8th Cir. 1998); 20 U.S.C. §§ 1412(a)(10)(A)(i)(I), 1412(a)(10)(C)(i); *D.L.*, 706 F.3d at 260 n.2 ("states only ha[ve] to allocate a proportionate amount of funds received from the federal government to [services for] eligible students in private schools.").

In her briefing, D'Avis appears to assume, incorrectly, that the child find requirements place a duty on the District to provide individualized services to students such as A.H, and thus give A.H. an individualized right that she can enforce through a due process hearing. But, the child find provision creates no individualized right to special education and related services. *D.L.*, 706 F.3d at 260; 34 C.F.R. § 300.137(a) ("No parentally-placed private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school."). To interpret the child find provision to impose an individualized right would "fl[y] directly in the face of the limitations

---

[14] "The amount of funds a state receives from the federal government is only a small fraction of the cost of providing for the special education of students." *D.L. ex rel. K.L. v. Baltimore Bd. of Sch. Comm'rs*, 706 F.3d 256, 260 n.2 (4th Cir. 2013). "As such, a state is only required to allocate a proportionate amount of this small fraction to eligible private school students." *Id.*

that Congress imposed on school districts' obligations under IDEA." *D.L.*, 706 F.3d at 260. Because the child find requirements provide A.H. with "no individual right under IDEA to the special education and related services . . . [, D'Avis has] no right to a . . . court decree mandating that those services be" provided or paid for by the District and no right to a due process hearing to address her child find claims. *Foley*, 153 F.3d at 865; *Bd. of Educ. of Appoquinimink Sch. Dist. v. Johnson*, 543 F. Supp. 2d 351, 359 n.5 (D. Del. 2008) ("Complaints regarding the provision of services to parentally-placed private school students are not subject to due process procedures."); 34 C.F.R. § 300.140(a).[15]

At oral argument, D'Avis took the position that even if the child find provision does not create an individual right subject to due process procedural requirements, the existence of an ongoing obligation on the part of the District to locate, identify, and evaluate A.H. supports the conclusion that her claims are not barred. We fail to see how this overcomes the requirement that a due process complaint be filed before removing the child from the District.

Thus, D'Avis's request for the hearing panel to order the District to provide special education services to A.H. while she was attending private school fails because child find does not create an individual right to services. D'Avis's request for placement of A.H. in a District

---

[15] To the extent that D'Avis argues that the hearing panel erred in finding her claims were barred because she is making a prospective claim under the child find provision, her claim is moot because A.H. now attends school in Kansas and the District has no ongoing child find obligation. The child find requirements are now the responsibility of the district in which A.H.'s present school is located. "Each [district] must locate, identify, and evaluate all children with disabilities who are enrolled by their parents in private, including religious, elementary schools and secondary *schools located in the school district . . . .*" 34 C.F.R. § 300.131(a). We need not decide whether, now that A.H. attends school outside of the geographical boundaries of District, the District is required to provide an IEP upon request, or whether that duty falls solely upon the district in which she is currently attending school. *Compare J.P.E.H. ex rel. Campbell v. Hooksett Sch. Dist.*, No. CIV. 07-CV-276-SM, 2008 WL 4681827, at *2 (D.N.H. Oct. 22, 2008) (where the student attended private school in a different district than he resides, "the responsibility to evaluate [student's] need for IDEA services passed from the [home district] to the district in which his private school is located."); *E.T. v. Bd. of Educ. of Pine Bush Cent. Sch. Dist.*, No. 11-CV-5510 ER, 2012 WL 5936537, at *11 (S.D.N.Y. Nov. 26, 2012) ("Simply because a school district 'may have child find responsibilities of its own' as to a disabled child enrolled in a non-public school within the district 'does not relieve [the district of residence of the same child] from having to fulfill its own responsibilities . . . to evaluate the student and make FAPE available.'" (quoting *Dist. of Columbia v. Abramson*, 493 F. Supp. 2d 80, 86 (D.D.C. 2007))).

school with certain accommodations, and payment of A.H.'s private school tuition are not revived because the child find provision, which relates only to identifying children in need of special education services who are attending private school so that a proportionate share of federal funds can be made available for special education services, does not address the relocation of those students to public schools or the payment of private school tuition. Thus, the child find provision is irrelevant to the relief sought by D'Avis and does not affect whether D'Avis adequately stated a claim for relief.

**Conclusion**

Because D'Avis's claims that the District did not provide adequate services while A.H attended the District and that she's entitled to tuition reimbursement are barred because they were not timely filed and because there is no right to individual services under child find. Thus D'Avis's request for services while A.H. was attending private school fails to state a claim, and the hearing panel did not err in dismissing her complaint. Accordingly, we affirm.

_____
Karen King Mitchell, Judge

Anthony Rex Gabbert, Presiding Judge, and
Joseph M. Ellis, Judge, concur.